**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM MOLAND
6305 Gallery Street
Bowie, Maryland 20720

       Plaintiff,

        v.

EXPLOSIVE COUNTERMEASURES
INTERNATIONAL, INC.,
3151 Winchester Road
Delaplane, Virginia 20144

SERVE:    Megan Kelley
           Registered Agent
           3151 Winchester Road
           Delaplane, Virginia 20144

and

MEGAN KELLEY,
3151 Winchester Road
Delaplane, Virginia 20144

       Defendants.

**\*Jury Trial Demanded\***

Civil Case No.: _____

## COMPLAINT AND JURY DEMAND

Plaintiff, William Moland, by and through his undersigned counsel, Brian J. Markovitz, Esq., Matthew E. Kreiser, Esq., and the law firm of Joseph, Greenwald & Laake, P.A., files this lawsuit and sues Explosive Countermeasures International, Inc., (hereinafter "ECI" or "Defendant ECI"), and Megan Kelley, (collectively "Defendants"). As to Defendant ECI, Plaintiff brings causes of action for unlawful failure to make reasonable accommodations, unlawful discrimination on the basis of Plaintiff's disability, and unlawful retaliation in violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of

2008, 42 U.S.C. §§ 12101 *et seq*., ("ADAAA").  Plaintiff brings causes of action against each respective Defendant pursuant to the District of Columbia Human Rights Act, D.C. Code §§ 2–1401 *et seq.*, ("DCHRA"), for unlawful failure to make reasonable accommodations, unlawful discrimination on the basis of Plaintiff's disability, and unlawful retaliation, for unlawful discrimination on the basis of Plaintiff's prior military service in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 *et seq*., ("USERRA"), and for unlawful retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*, ("FLSA"), and as cause therefore states the following:

## JURISDICTION AND VENUE

1.     This action for unlawful discrimination and retaliation is brought pursuant to 42 U.S.C. § 12112(a), 42 U.S.C. § 12112(b)(5)(A), 42 U.S.C. § 12203(a), 38 U.S.C. § 4311, and 29 U.S.C. § 215(a)(3).  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2.     The Court may exercise supplemental jurisdiction over Plaintiff's claims arising under the DCHRA pursuant to 28 U.S.C. § 1367.

3.     A substantial portion of the events or omissions giving rise to this action occurred within the District of Columbia where Plaintiff performed his job duties for Defendants.  Defendants engaged in the lawful business of providing bomb detection and prevention services within the District of Columbia and are subject to this Court's jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and D.C. Code § 13–423(a)(1).

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

5.     Plaintiff has exhausted his administrative remedies and commences this action more than 180 days after filing a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"), and within 90 days of receipt of his Notice of Right to Sue.

## PARTIES

6.     Plaintiff, William Moland, is a former employee of Defendants and resides in the State of Maryland.

7.     Defendant Explosive Countermeasures International, Inc., is a corporation organized under the laws of the Commonwealth of Virginia engaged in the lawful business of providing bomb detection and prevention services in Virginia, Maryland, and the District of Columbia.

8.     Defendant Megan Kelley is the Managing Director of Defendant ECI and resides in the Commonwealth of Virginia.  Defendant Kelley is responsible for managing the day-to-day operations of Defendant ECI and maintains operational control over a respective employee's wages, hours, and terms of employment.

9.     Defendant Kelley is an "employer" within the meaning of the DCHRA, D.C. Code § 2–1401.02(10), as a "person acting in the interest of [an] employer," in her capacity as the Managing Director of Defendant ECI and as the individual directly initiating and/or indirectly condoning the illegal discriminatory and retaliatory conduct complained of herein. *E.g. Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 284–85 (D.D.C. 2008); *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 73 (D.D.C. 2012).

10.     Defendant Kelley is an "employer" within the meaning of USERRA, 38 U.S.C. § 4303(4), in her capacity as the Managing Director of ECI, acting as a delegee of the company's decision making authority, had the power to hire and fire employees.  *E.g.*, *Bello v. Vill. of Skokie*, 151 F. Supp. 3d 849, 858–59 (N.D. Ill. 2015) ("The plain text of USERRA's definition of an 'employer' reflects that an individual, whether acting on his own behalf or as a delegee of decision

making authority, can be held liable"); *accord Mace v. Willis*, 259 F. Supp. 3d 1007, 1022–23 (D.S.D. 2017).

11.     Defendant Kelley is an "employer" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), ("FLSA"), as a "person acting directly or indirectly in the interest of an employer" in her capacity as the Managing Director of Defendant ECI as the individual who exercised operational control over Defendant ECI. *E.g.*, *Amaya v. Logo Enters., LLC*, 251 F. Supp. 3d 196, 200 (D.D.C. 2017) ("Typically, an individual who exercises operational control over an employee's wages, hours, and terms of employment qualifies as an 'employer,' and is subject to individual liability [under the FLSA]") (internal citations and quotations omitted).

## FACTS COMMON TO ALL COUNTS

***Plaintiff's Prior Military Service with the United States Air Force and Navy***

12.     Prior to commencing his employment with Defendants, Mr. Moland was a member of the United States Armed Forces. Mr. Moland served both in the United States Air Force, ("Air Force"), and in the United States Navy, ("Navy"), as a canine handler.

13.     Mr. Moland served in the Air Force from approximately 1993 until 1997. During his time serving in the Air Force, Mr. Moland earned certification to be a detection and patrol dog dual handler.

14.     Upon the conclusion of his service in the Air Force, Mr. Moland was honorably discharged.

15.     Mr. Moland served in the Navy from approximately 2001 until 2008.

16.     During his time in the Navy, Mr. Moland became the first Navy active duty member to be assigned a canine without being ranked as a Master-at-Arms (E-4).

17.     Following the devastation wrought upon New Orleans, Louisiana, by Hurricane Katrina in 2005, Mr. Moland responded to the Navy's call for volunteers to assist with the hurricane relief efforts and was dispatched to New Orleans.  For his conduct and actions in support of the Hurricane Katrina relief efforts, Mr. Moland received a Commendation Letter Award.

18.     Shortly thereafter, Mr. Moland was deployed by the Navy to Afghanistan to serve as a Bomb Sniffing Dog Handler.  Mr. Moland was responsible for handling bomb detection dogs during military operations.

19.     However, during Mr. Moland's tour of duty in Afghanistan, Mr. Moland was injured while on patrol when an enemy improvised explosive device, ("IED"), detonated in close proximity.

20.     The explosion caused significant damage to Mr. Moland's right knee and back, which impeded and impaired his ability to move, stand, and walk/run long distances.  Due to the injuries, Mr. Moland walks with a limp and experiences pain in his leg and back after prolonged periods of walking, running, or being on his feet.

21.     Due to the injuries suffered in the IED explosion, Mr. Moland was honorably discharged from the Navy on or around February 2008.

22.     For his meritorious service and actions during the Afghanistan War, Mr. Moland received the National Defense Service Medal and the Bronze Star Medal.

23.     On or around December 2009, Mr. Moland obtained employment with Can-Am Protection Agency, ("Can-Am"), a Government contractor, as a canine handler.

24.     Shortly after his hire, Mr. Moland was deployed back to Afghanistan by Can-Am.

25.     During his time in Afghanistan as a canine handler with Can-Am, Mr. Moland was injured, again, when another enemy IED exploded in close proximity. The explosion was so close

that it killed Mr. Moland's service canine, Max.  Mr. Moland was caused to suffer additional injuries to his right knee and lower back from the IED explosion.

26.     During his total time in Afghanistan, Mr. Moland and his service canine found over one-hundred (100) IEDs, weapons caches, and IED factory buildings/rooms that were neutralized to reduce and help prevent causalities to American servicemen and servicewomen.

27.     Mr. Moland's injuries sustained from IED explosions were physical and/or mental impairments that substantially limited one or more major life activities and constitute a disability within the meaning of the ADAAA and the DCHRA.

***Plaintiff's Post-Military Service Employment***

28.     From November 2015 through May 2016, Plaintiff was employed as a canine handler with American K-9 Detection Services, LLC, ("AMK9").

29.     AMK9 had contracted with the Government to provide bomb detection services at the Internal Revenue Services, ("IRS"), building in New Carrolton, Maryland.  Mr. Moland was specifically hired for this position and was provided a company-owned vehicle to transport his service canine, who resided with and was cared for by Mr. Moland.

30.     At all times relevant, Mr. Moland met and/or exceeded his performance expectations as a canine handler for AMK9.

31.     On or around May 2016, Defendant ECI acquired the contract to provide bomb detection services at the IRS building in New Carrolton, Maryland.

32.     On or around May 13, 2016, Mr. Moland was contacted by a representative from AMK9 and informed that Defendant ECI had acquired the contract to provide bomb detection services at the IRS building and Mr. Moland was to return his AMK9 badge and await further instruction.

6

33.     On or around May 14, 2016, Mr. Moland was contacted by Defendant Kelley, ECI's Managing Director.

34.     Defendant Kelley is responsible for managing the day-to-day operations of ECI. At all times relevant to this action, Defendant Kelley had the ability to discipline ECI's employees, hire and fire ECI's employees, evaluate their job performance, assign job duties and other work-related tasks, assign work locations, remove any job duties of any employee of ECI, and control their terms and conditions of employment. At all times relevant, Defendant Kelley was Mr. Moland's supervisor.

35.     Defendant Kelley contacted Mr. Moland and informed him that all canine handlers currently working at the IRS building under the previous contract with AMK9 were to be offered a position at ECI.

36.     On the same day, Mr. Moland accepted Defendant Kelley's offer of employment to continue as a canine handler at the IRS building in New Carrolton, Maryland, with ECI.

37.     Defendant Kelley instructed Mr. Moland to keep his AMK9 uniform, company vehicle, and service canine until such time that ECI could provide ECI-owned uniforms, company vehicles, and service canines.

***Defendant Kelley's Negative, Discriminatory Attitude and Animus Towards Disabled Veterans and Veterans Who Had Been Previously Deployed***

38.     Following the commencement of his employment with Defendants, on or around the fall of 2016, Mr. Moland contacted Defendant Kelley to recommend that she hire Paul Jasmine, a canine handler who Mr. Moland had previously worked with during his time in Afghanistan.

39.     During this conversation, Mr. Moland informed Defendant Kelley that Mr. Jasmine, like Mr. Moland, had been injured by an enemy IED in Afghanistan, which also killed his service canine.  Mr. Moland informed Defendant Kelley that Mr. Jasmine had lost one of his

legs due to the explosion and wore a prosthesis. Although Mr. Jasmine wore a prosthetic leg, Mr. Moland informed Defendant Kelley that Mr. Jasmine was in great physical shape, constantly ran while wearing his prosthesis, and would make for a great addition to ECI as an experienced canine handler.

40.     However, upon hearing from Mr. Moland that Mr. Jasmine was a disabled veteran who had been previously deployed, Defendant Kelley told Mr. Moland, in no uncertain terms, that she would not hire Mr. Jasmine or any other former service member who had been previously deployed because they "*were all messed up in some way*."

41.     Defendant Kelley further told Mr. Moland that she "would *never* hire a deployed [canine] handler" and she "preferred non-deployed guys."

42.     Mr. Moland was deeply offended by Defendant Kelley's negative, discriminatory attitude and animus towards disabled veterans and service members who had been previously deployed. Mr. Moland had been previously deployed to Afghanistan with the Navy and was disabled therefrom due to an enemy IED explosion.

43.     Unfortunately, Defendant Kelley would aim her negative, discriminatory attitude and animus towards Mr. Moland over the course of his employment with Defendants because Mr. Moland was a disabled veteran who had been deployed previously to Afghanistan.

*Defendants' Discriminatory and Retaliatory Behavior Towards Plaintiff*

44.     One specific instance of Defendant Kelley's negative, discriminatory attitude and animus manifesting towards Mr. Moland occurred on or around the end of December 2016.

45.     On or around the end of December 2016, ECI issued year-end bonuses to its employees. Bonuses issued to ECI's employees for 2016 ranged anywhere from $200.00 to $40,000.00.

46.     Although Mr. Moland had been employed with Defendants since its acquisition of the contract from AMK9 in May 2016 to perform bomb detection services at the IRS building in New Carrolton, Maryland, Mr. Moland did not receive a year-end bonus from ECI despite meeting and/or exceeding his performance expectations as a canine handler.

47.     Mr. Moland was not the only disabled veteran and employee of ECI to not receive a year-end bonus in 2016.

48.     Jake Harmon, a disabled veteran like Mr. Moland, likewise did not receive a year-end bonus in 2016 from ECI.

49.     Mr. Moland and Mr. Harmon, the only other disabled veteran in the employ of ECI, were the only employees to not receive a year-end bonuses in 2016.

50.     ECI and Defendant Kelley gave two recently hired employees, J.T. and Andrew, who had been in ECI's employ for *less than* one month, year-end bonuses for 2016.  Neither J.T. nor Andrew were disabled veterans nor had either been previously deployed to a combat zone.

51.     Mr. Moland did not receive a year-end bonus because he was a disabled veteran who had been previously deployed.

52.     On or around January 2017, Defendant Kelley reassigned Mr. Moland from performing his canine handler duties at the IRS building in New Carrolton, Maryland, to another worksite in West Virginia, which caused an approximate two-hour commute each way.

53.     During this time, ECI failed to pay to Mr. Moland wages for the period of time Mr. Moland spent commuting to the worksite in West Virginia from Maryland.  ECI likewise failed to pay Mr. Moland wages for time spent training and failed to reimburse him for amounts spent to care and maintain the service canine and vehicle under his care, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., ("FLSA").

54.     On or around this time, Mr. Moland filed a complaint with the United States Department of Labor, ("DOL"), Case No.: 1849497, concerning ECI's willful failure to pay wages and willful failure to reimburse Mr. Moland for business expenses incurred caring for his service animal and the company-owned vehicle, in violation of the FLSA.

55.     The DOL's investigation into Mr. Moland's complaint remains pending.

56.     Defendant Kelley was notified of the DOL's investigation into Mr. Moland's complaint of unpaid wages and became upset with Mr. Moland for having filed a complaint with the DOL concerning ECI's willful violations of the FLSA.

57.     On or around February 2017, Defendant Kelley assigned Mr. Moland to work at the Kennedy Center in Washington, D.C., as an explosives detection canine handler.

58.     On or around this time, Mr. Moland attended indoctrination training for the position at the Kennedy Center in Washington, D.C.  At the indoctrination training, Mr. Moland learned that this position would require him to constantly be on his feet and walk approximately eight to ten miles per day without a break.

59.     The amount of walking and time spent on his feet at the Kennedy Center was significantly more than what was required at Mr. Moland's previous work assignments.  Due to Mr. Moland's disability from knee and back injuries sustained from IED explosions in Afghanistan, Mr. Moland could not spend prolonged periods of time walking, running, or being on his feet without taking a short break as would be required working at the Kennedy Center.

60.     Mr. Moland's reassignment to the Kennedy Center came on the heels of Mr. Moland's DOL complaint.

61.     Defendant Kelley had notice and was well aware of Mr. Moland's disability and the difficulties he would incur in performing his duties at the Kennedy Center without an accommodation for his disability.

62.     Shortly after being assigned to the position at the Kennedy Center, Mr. Moland contacted Defendant Kelley and specifically discussed with her that due to his knee and back injuries (*i.e.*, disability) he would be unable to perform the periods of prolonged standing and walking this assignment would require without taking a short break.

63.     Mr. Moland asked Defendant Kelley to accommodate his disability and reassign him to another worksite in ECI's portfolio where he could perform his duties as a canine handler and not have to spend prolonged periods of time walking or being on his feet without a short break. Mr. Moland's previous assignment at the IRS building in New Carrolton, Maryland, was one such position.

64.     Mr. Moland had previously performed his job duties as a canine handler at the IRS building in New Carrolton, Maryland, without issue.

65.     Following Mr. Moland's request for an accommodation of his known disability (*i.e.*, transfer to another assignment or be permitted to take short breaks after prolonged periods of walking, running, or standing), at no point in time did Defendant Kelley or any agent of ECI meet with Mr. Moland to discuss his requested accommodation(s), discuss the possibility of modifying his duties at the Kennedy Center to provide for a short break after prolonged periods of walking, running, or standing, or review with Mr. Moland whether there were other available canine handler positions within ECI's portfolio that could accommodate Mr. Moland's disability.   In sum, Defendants refused for well over two months to even engage Mr. Moland in the most basic of steps

for the ADAAA's and DCHRA's interactive process to attempt to accommodate Mr. Moland's disability.

66.     ECI had other available canine handler worksites in its portfolio for which Mr. Moland was well-qualified and could have been reassigned that did not require prolonged periods of walking.  One such available work site was at the IRS building in New Carrolton, Maryland.

67.     After requesting an accommodation over approximately two months prior, on or around April 13, 2017, Defendant Kelley provided Mr. Moland with a medical questionnaire and instructed him to have his physician complete the document so that she "could make a decision" regarding his February 2017 request for an accommodation.

68.     On or about late April or early May 2017, the DOL contacted Mr. Moland and requested that he appear for an interview regarding his complaint of ECI's willful failure to pay him wages, in violation of the FLSA.

69.     On or about May 5, 2017, Defendant Kelley contacted Mr. Moland by phone and attempted to intimidate him in advance of his interview with the DOL and dissuade him from providing truthful statements in support of the DOL's investigation.  Specifically, Defendant Kelley attempted to coerce Mr. Moland to provide the DOL with false statements concerning ECI's failure to pay wages, namely that ECI was in compliance with all wage and hour requirements.

70.     On or about May 11, 2017, Dr. Adam Barelski, M.D., examined Mr. Moland and completed the medical questionnaire.  Dr. Barelski stated in the questionnaire that Mr. Moland suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of walking.

71.     Dr. Barelski further stated in the questionnaire that Mr. Moland could fully perform his job duties as a canine handler if given the opportunity to sit and/or rest for a limited period of time following periods of prolonged walking or running.

72.     On May 12, 2017, Mr. Moland met with DOL investigator(s) concerning his complaint that ECI had willfully failed to pay him wages, in violation of the FLSA.

73.     Shortly after receiving Mr. Moland's completed medical questionnaire and his interview with the DOL concerning ECI's wage and hour violations, on or about May 15, 2017, Defendant Kelley emailed Mr. Moland and informed him that Defendants will be unable to accommodate his disability.

74.     Defendant Kelley made representations to Mr. Moland regarding ECI's inability to accommodate his disability with knowledge that ECI could have accommodated his disability and had other available assignments in ECI's portfolio for which Mr. Moland was well-qualified as a canine handler and could have been assigned, which did not require prolonged periods of walking, running, or standing.

75.     Moreover, Defendant Kelley made no effort to and did not discuss with Mr. Moland whether he could take short, limited breaks to rest while on his assignment at the Kennedy Center after prolonged periods of walking, running, or standing.

76.     On or about May 16, 2017, Defendant Kelley terminated Mr. Moland's employment with ECI.

77.      Defendants terminated Mr. Moland's employment with ECI on the basis of his disability, on the basis of his prior military service, on the basis of his request for accommodation of his disability, and on the basis of his DOL complaint.

78.     Shortly after terminating Mr. Moland's employment, Defendant Kelley also terminated the employment of Mr. Harman, the only other disabled veteran in ECI's employ.

79.     On November 8, 2017, Mr. Moland timely filed a Charge of Discrimination with the EEOC alleging unlawful disability-based discrimination, unlawful failure to accommodate his known disability, and unlawful retaliation.

***Defendants' Post-Termination Retaliation Against Plaintiff***

80.     Defendant ECI and Defendant Kelley continue to retaliate against Mr. Moland after his termination from employment.

81.     Specifically, following his termination from employment with ECI, Defendant Kelley has maliciously and purposefully impeded Mr. Moland from obtaining suitable reemployment in knowing bad faith.

82.     On or about May 2017, Mr. Moland applied to a position with the United States Department of State, ("State Department"). The position required Mr. Moland to submit to a background investigation.

83.     During the Government's background investigation, Defendant Kelley, on behalf of ECI, provided a negative reference to Government investigator(s) concerning Mr. Moland's employment with ECI.  Defendant Kelley stated to the Government investigator(s) that Mr. Moland was "not trustworthy" and was a "dangerous driver."

84.     Defendant Kelley made these statements regarding Mr. Moland to Government investigators in bad faith, knowing falsity, and in retaliation for having previously engaged in protected activity.

85.     On or about May 10, 2018, Mr. Moland was informed that he would not be hired for the position with the State Department.

86.     On or about April 30, 2018, Mr. Moland applied for a position with the United States Department of Defense, ("DOD"). This position also required Mr. Moland to submit to a background investigation.

87.     During the Government's background investigation, Defendant Kelley, on behalf of ECI, provided another negative reference to Government investigator(s) concerning Mr. Moland's employment with ECI.

88.     On or around May 2018, Mr. Moland was informed that he would not be hired for the position with the DOD.

89.     ECI and Defendant Kelley retaliated against Mr. Moland, following the termination of his employment, on the basis of his DOL complaint regarding ECI's failure to pay requisite wages and on the basis of his filing of a Charge of Discrimination with the EEOC.

90.     Mr. Moland remains unemployed as a result of Defendants' continued retaliation against him for having previously engaged in protected activity.

## COUNT ONE
### (Defendant Explosive Countermeasures International, Inc.)
### Unlawful Failure to Make Reasonable Accommodations
### Americans with Disabilities Act of 1990 – 42 U.S.C. § 12112(b)(5)(A)

91.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

92.     As an employee of Defendant ECI, Plaintiff was entitled to the protections of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12112(b)(5)(A), ("ADAAA"), which prohibits Defendant ECI from failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.

93.    At all times relevant to this action, Plaintiff was disabled within the meaning of the ADAAA, 42 U.S.C. § 12102(1)(A).  Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of prolonged walking, running, standing, sitting, lifting, and bending and constitutes a disability within the meaning of the ADAAA.

94.    At all times relevant to this action, Plaintiff was a "qualified individual" within the meaning of the ADAAA, 42 U.S.C. § 12102(1)(A), who could perform the essential functions of his position as a canine handler with or without reasonable accommodations.

95.    At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

96.    Defendant ECI had notice of Plaintiff's disability.

97.    Defendant ECI failed to engage Plaintiff in the mandatory interactive process to identify a reasonable accommodation and refused to make any accommodations for Plaintiff's disability.

98.    The ADAAA imposes upon Defendant ECI a good-faith duty to engage in an interactive process to identify a reasonable accommodation, which is triggered when an employee communicates his disability and desire for an accommodation—even if the employee fails to identify a specific accommodation.  *See* 29 C.F.R. § 1630.2(*o*)(3); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015).

99.    Plaintiff suffered injuries to his legs and back from enemy IED explosions while serving as a canine handler in combat zones in Afghanistan.

100.    On or around February 2017, Defendant Kelley assigned Plaintiff to work at the Kennedy Center in Washington, D.C.

101.    On or around this time, Plaintiff attended indoctrination training for the assignment at the Kennedy Center and learned that his position would require constant walking of approximately eight to ten miles per day without a break.

102.    The amount of walking and time spent on his feet at the Kennedy Center was significantly more than what was required at Plaintiff's previous assignments.  Due to the disabling knee and back injuries Plaintiff sustained from enemy IED explosions while serving in Afghanistan, Plaintiff could not spend prolonged periods of time walking, running, or being on his feet without taking periodic, limited breaks as would be required at the Kennedy Center assignment.

103.    Defendant ECI had notice and was well aware of Plaintiff's disability and the difficulties he would incur in performing his duties at the Kennedy Center without an accommodation for his disability.

104.    Shortly after being assigned to the position at the Kennedy Center, Plaintiff contacted Defendant Kelley and specifically discussed with her that due to his knee and back injuries (*i.e.*, disability) he would be unable to perform the periods of prolonged standing and walking this assignment would require without taking a short break.

105.    Plaintiff asked Defendant Kelley to accommodate his disability and reassign him to another worksite in Defendant ECI's portfolio where he could perform his duties as a canine handler and not have to spend prolonged periods of time walking or being on his feet without a short break.  Plaintiff's previous assignment at the IRS building in New Carrolton, Maryland, was one such position.

106.    Plaintiff had previously performed his job duties as a canine handler at the IRS building in New Carrolton, Maryland, without issue.

107.    Following Plaintiff's request for an accommodation of his known disability (*i.e.*, transfer to another assignment or be permitted to take short breaks after prolonged periods of walking, running, or standing), at no point in time did Defendant Kelley or any agent of Defendant ECI meet with Plaintiff to discuss his requested accommodation(s), discuss the possibility of modifying his duties at the Kennedy Center to provide for a short break after prolonged periods of walking, running, or standing, or review with Plaintiff whether there were other available canine handler positions within ECI's portfolio that could accommodate Plaintiff's disability.  Defendants refused for well over two months to even engage Plaintiff in the most basic of steps for the ADAAA's interactive process to attempt to accommodate Plaintiff's disability.

108.    Defendant ECI had other available canine handler worksites in its portfolio for which Plaintiff was well-qualified and could have been reassigned that did not require prolonged periods of walking.  One such available work site was at the IRS building in New Carrolton, Maryland.

109.    After requesting an accommodation over approximately two months prior, on or around April 13, 2017, Defendant Kelley provided Plaintiff with a medical questionnaire and instructed him to have his physician complete the document so that she "could make a decision" regarding his February 2017 request for an accommodation.

110.    Defendant ECI's failure to engage Plaintiff in the mandatory interactive process and to discuss and identify reasonable accommodation(s) with him is evidence that Defendant ECI was not acting in good faith to find a solution to Plaintiff's accommodations request.

111.    Defendant ECI failed to make any accommodations for Plaintiff to manage his disability and perform the essential functions of his position.

112.    Defendant ECI acted in knowing bad faith.

113.    As a direct and proximate result of Defendant ECI's failure to engage Plaintiff in the mandatory interactive process to discuss and identify reasonable accommodation(s) to manage Plaintiff's disability that would permit him to perform the essential functions of his position, Defendant failed to make reasonable accommodations in violation of the ADAAA.

114.    On May 16, 2017, Defendant ECI terminated Plaintiff's employment.

115.    As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

116.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

117.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.    That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.    That the Court award Plaintiff punitive damages in an amount to be proven at trial;

d.    That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.    That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

**COUNT TWO**
**(Defendant Explosive Countermeasures International, Inc.)**
**Unlawful Failure to Make Reasonable Accommodations**
**District of Columbia Human Rights Act – D.C. Code § 2–1402.11**

118.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

119.    As an employee of Defendant ECI, Plaintiff was entitled to the protections of the District of Columbia Human Rights Act, D.C. Code § 2–1402.11, ("DCHRA"), which prohibits Defendant ECI from failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.  *See Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583–85 (D.C. 2001) (analyzing failure to accommodate claim under the DCHRA).

120.    At all times relevant to this action, Plaintiff was disabled within the meaning of the DCHRA.  D.C. Code § 2–1401.02(5A). Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activities of prolonged walking, running, standing, sitting, lifting, and bending and constitutes a disability within the meaning of the DCHRA.  *Grant*, 786 A.2d at 584.

121.    At all times relevant to this action, Plaintiff was a "qualified individual" within the meaning of the DCHRA who could perform the essential functions of his position as a canine handler with or without reasonable accommodations.

122.    At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

123.    Defendant ECI had notice of Plaintiff's disability.

124.    Defendant ECI failed to engage Plaintiff in the mandatory interactive process to identify a reasonable accommodation and refused to make any accommodations for Plaintiff's disability.

125.    The DCHRA imposes upon Defendant ECI a good-faith duty to engage in an interactive process to identify a reasonable accommodation, which is triggered when an employee communicates his disability and desire for an accommodation—even if the employee fails to identify a specific accommodation.  *See* 29 C.F.R. § 1630.2(*o*)(3); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015).

126.    Plaintiff suffered injuries to his legs and back from enemy IED explosions while serving as a canine handler in combat zones in Afghanistan.

127.    On or around February 2017, Defendant Kelley assigned Plaintiff to work at the Kennedy Center in Washington, D.C.

128.    On or around this time, Plaintiff attended indoctrination training for the assignment at the Kennedy Center and learned that his position would require constant walking of approximately eight to ten miles per day without a break.

129.    The amount of walking and time spent on his feet at the Kennedy Center was significantly more than what was required at Plaintiff's previous assignments.  Due to the disabling knee and back injuries Plaintiff sustained from enemy IED explosions while serving in Afghanistan, Plaintiff could not spend prolonged periods of time walking, running, or being on his feet without taking a break as would be required at the Kennedy Center assignment.

130.    Defendant ECI had notice and was well aware of Plaintiff's disability and the difficulties he would incur in performing his duties at the Kennedy Center without an accommodation for his disability.

21

131.    Shortly after being assigned to the position at the Kennedy Center, Plaintiff contacted Defendant Kelley and specifically discussed with her that due to his knee and back injuries (*i.e.*, disability) he would be unable to perform the periods of prolonged standing and walking this assignment would require without taking a short break.

132.    Plaintiff asked Defendant Kelley to accommodate his disability and reassign him to another worksite in Defendant ECI's portfolio where he could perform his duties as a canine handler and not have to spend prolonged periods of time walking or being on his feet without a short break.  Plaintiff's previous assignment at the IRS building in New Carrolton, Maryland, was one such position.

133.    Plaintiff had previously performed his job duties as a canine handler at the IRS building in New Carrolton, Maryland, without issue.

134.    Following Plaintiff's request for an accommodation of his known disability (*i.e.*, transfer to another assignment or be permitted to take short breaks after prolonged periods of walking, running, or standing), at no point in time did Defendant Kelley or any agent of Defendant ECI meet with Plaintiff to discuss his requested accommodation(s), discuss the possibility of modifying his duties at the Kennedy Center to provide for a short break after prolonged periods of walking, running, or standing, or review with Plaintiff whether there were other available canine handler positions within ECI's portfolio that could accommodate Plaintiff's disability.  Defendants refused for well over two months to even engage Plaintiff in the most basic of steps for the ADAAA's interactive process to attempt to accommodate Plaintiff's disability.

135.    Defendant ECI had other available canine handler worksites in its portfolio for which Plaintiff was well-qualified and could have been reassigned that did not require prolonged

periods of walking. One such available work site was at the IRS building in New Carrolton, Maryland.

136. After requesting an accommodation over approximately two months prior, on or around April 13, 2017, Defendant Kelley provided Plaintiff with a medical questionnaire and instructed him to have his physician complete the document so that she "could make a decision" regarding his February 2017 request for an accommodation.

137. Defendant ECI's failure to engage Plaintiff in the mandatory interactive process and to discuss and identify reasonable accommodation(s) with him is evidence that Defendant ECI was not acting in good faith to find a solution to Plaintiff's accommodations request.

138. Defendant ECI failed to make any accommodations for Plaintiff to manage his disability and perform the essential functions of his position.

139. Defendant ECI acted in knowing bad faith.

140. As a direct and proximate result of Defendant ECI's failure to engage Plaintiff in the mandatory interactive process to discuss and identify reasonable accommodation(s) to manage Plaintiff's disability that would permit him to perform the essential functions of his position, Defendant failed to make reasonable accommodations in violation of the DCHRA.

141. On May 16, 2017, Defendant ECI terminated Plaintiff's employment.

142. As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

143. Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

144.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.    That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.    That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.    That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.    That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT THREE
**(Defendant Megan Kelley)**
**Unlawful Failure to Make Reasonable Accommodations**
**District of Columbia Human Rights Act – D.C. Code § 2–1402.11**

145.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

146.    Defendant Kelley is an "employer" within the meaning of the DCHRA, D.C. Code § 2–1401.02(10), as a "person acting in the interest of [an] employer," in her capacity as the Managing Director of Defendant ECI and as the individual directly initiating and/or indirectly condoning the illegal discriminatory and retaliatory conduct complained of herein. *E.g. Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 284–85 (D.D.C. 2008); *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 73 (D.D.C. 2012).

147.    Plaintiff was an employee of Defendant Kelley.

148.     As an employee of Defendant Kelley, Plaintiff was entitled to the protections of the District of Columbia Human Rights Act, D.C. Code § 2–1402.11, ("DCHRA"), which prohibits Defendant Kelley from failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.  *See Grant v. May Dep't Stores Co*., 786 A.2d 580, 583–85 (D.C. 2001) (analyzing failure to accommodate claim under the DCHRA).

149.     At all times relevant to this action, Plaintiff was disabled within the meaning of the DCHRA.  D.C. Code § 2–1401.02(5A).  Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of prolonged walking, running, standing, sitting, lifting, and bending and constitutes a disability within the meaning of the DCHRA.  *Grant*, 786 A.2d at 584.

150.     At all times relevant to this action, Plaintiff was a "qualified individual" within the meaning of the DCHRA who could perform the essential functions of his position as a canine handler with or without reasonable accommodations.

151.     At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

152.     Defendant Kelley had notice of Plaintiff's disability.

153.     Defendant Kelley failed to engage Plaintiff in the mandatory interactive process to identify a reasonable accommodation and refused to make any accommodations for Plaintiff's disability.

154.     The DCHRA imposes upon Defendant Kelley a good-faith duty to engage in an interactive process to identify a reasonable accommodation, which is triggered when an employee communicates his disability and desire for an accommodation—even if the employee fails to

identify a specific accommodation.  *See* 29 C.F.R. § 1630.2(*o*)(3); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015).

155.    Plaintiff suffered injuries to his legs and back from enemy IED explosions while serving as a canine handler in combat zones in Afghanistan.

156.    On or around February 2017, Defendant Kelley assigned Plaintiff to work at the Kennedy Center in Washington, D.C.

157.    On or around this time, Plaintiff attended indoctrination training for the assignment at the Kennedy Center and learned that his position would require constant walking of approximately eight to ten miles per day without a break.

158.    The amount of walking and time spent on his feet at the Kennedy Center was significantly more than what was required at Plaintiff's previous assignments.  Due to the disabling knee and back injuries Plaintiff sustained from enemy IED explosions while serving in Afghanistan, Plaintiff could not spend prolonged periods of time walking, running, or being on his feet without taking a break as would be required at the Kennedy Center assignment.

159.    Defendant Kelley had notice and was well aware of Plaintiff's disability and the difficulties he would incur in performing his duties at the Kennedy Center without an accommodation for his disability.

160.    Shortly after being assigned to the position at the Kennedy Center, Plaintiff contacted Defendant Kelley and specifically discussed with her that due to his knee and back injuries (*i.e.*, disability) he would be unable to perform the periods of prolonged standing and walking this assignment would require without taking a short break.

161.    Plaintiff asked Defendant Kelley to accommodate his disability and reassign him to another worksite in ECI's portfolio where he could perform his duties as a canine handler and

26

not have to spend prolonged periods of time walking or being on his feet without a short break. Plaintiff's previous assignment at the IRS building in New Carrolton, Maryland, was one such position.

162.    Plaintiff had previously performed his job duties as a canine handler at the IRS building in New Carrolton, Maryland, without issue.

163.    Following Plaintiff's request for an accommodation of his known disability (*i.e.*, transfer to another assignment or be permitted to take short breaks after prolonged periods of walking, running, or standing), at no point in time did Defendant Kelley, or any agent of Defendant ECI, meet with Plaintiff to discuss his requested accommodation(s), discuss the possibility of modifying his duties at the Kennedy Center to provide for a short break after prolonged periods of walking, running, or standing, or review with Plaintiff whether there were other available canine handler positions within ECI's portfolio that could accommodate Plaintiff's disability.  Defendants refused for well over two months to even engage Plaintiff in the most basic of steps for the ADAAA's interactive process to attempt to accommodate Plaintiff's disability.

164.    ECI had other available canine handler worksites in its portfolio for which Plaintiff was well-qualified and could have been reassigned that did not require prolonged periods of walking.  One such available work site was at the IRS building in New Carrolton, Maryland.

165.    After requesting an accommodation over approximately two months prior, on or around April 13, 2017, Defendant Kelley provided Plaintiff with a medical questionnaire and instructed him to have his physician complete the document so that she "could make a decision" regarding his February 2017 request for an accommodation.

27

166.    Defendant Kelley's failure to engage Plaintiff in the mandatory interactive process and to discuss and identify reasonable accommodation(s) with him is evidence that Defendant Kelley was not acting in good faith to find a solution to Plaintiff's accommodations request.

167.    Defendant Kelley failed to make any accommodations for Plaintiff to manage his disability and perform the essential functions of his position.

168.    Defendant Kelley acted in knowing bad faith.

169.    As a direct and proximate result of Defendant Kelley's failure to engage Plaintiff in the mandatory interactive process to discuss and identify reasonable accommodation(s) to manage Plaintiff's disability that would permit him to perform the essential functions of his position, Defendant failed to make reasonable accommodations in violation of the DCHRA.

170.    On May 16, 2017, Defendant Kelley terminated Plaintiff's employment with ECI.

171.    As a further direct and legal result of Defendant Kelley's conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

172.    Defendant Kelley's actions directly and proximately caused all injuries and damages sought herein.

173.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant Kelley;

b.    That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.     That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.     That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.     That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

<u>**COUNT FOUR**</u>
**(Defendant Explosive Countermeasures International, Inc.)**
**Unlawful Disability-Based Discrimination**
**Americans with Disabilities Act of 1990 – 42 U.S.C. § 12112(a)**

174.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

175.     As an employee of Defendant ECI, Plaintiff was entitled to the protections of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12112(a), ("ADAAA"), which prohibits discrimination against an individual on the basis of their disability.

176.     At all times relevant to this action, Plaintiff was disabled within the meaning of the ADAAA, 42 U.S.C. § 12102(1)(A).  Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of prolonged walking, running, standing, sitting, lifting, and bending and constitutes a disability within the meaning of the ADAAA.

177.     At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

178.     Defendant ECI had notice of Plaintiff's disability.

179.     On May 16, 2017, Plaintiff suffered a materially adverse employment action when he was terminated from his position at ECI as a canine handler.

180.    As a result of Plaintiff's disability, Defendant ECI took adverse action against him by terminating his employment in violation of the ADAAA.

181.    Defendant ECI knowingly and purposefully terminated Plaintiff from his position as a canine handler on the basis of his disability in bad faith.

182.    As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

183.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

184.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.    That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.    That the Court award Plaintiff punitive damages in an amount to be proven at trial;

d.    That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.    That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT FIVE
**(Defendant Explosive Countermeasures International, Inc.)**
**Unlawful Disability-Based Discrimination**
**District of Columbia Human Rights Act – D.C. Code § 2–1402.11**

185.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

186.    As an employee of Defendant ECI, Plaintiff was entitled to the protections of the District of Columbia Human Rights Act, D.C. Code § 2–1402.11, ("DCHRA"), which prohibits discrimination against an individual on the basis of their disability.

187.    At all times relevant to this action, Plaintiff was disabled within the meaning of the DCHRA.  D.C. Code § 2–1401.02(5A).  Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of prolonged walking or running, and constitutes a disability within the meaning of the DCHRA.

188.    At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

189.    Defendant ECI had notice of Plaintiff's disability.

190.    On May 16, 2017, Plaintiff suffered a materially adverse employment action when he was terminated from his position at ECI as a canine handler.

191.    As a result of Plaintiff's disability, Defendant ECI took adverse action against him by terminating his employment in violation of the DCHRA.

192.    Defendant ECI knowingly and purposefully terminated Plaintiff from his position as a canine handler on the basis of his disability in bad faith.

193.    As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

194.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

195.     As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.     That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.     That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.     That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.     That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.     That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

**COUNT SIX**
**(Defendant Megan Kelley)**
**Unlawful Disability-Based Discrimination**
**District of Columbia Human Rights Act – D.C. Code § 2–1402.11**

196.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

197.     Defendant Kelley is an "employer" within the meaning of the DCHRA, D.C. Code § 2–1401.02(10), as a "person acting in the interest of [an] employer," in her capacity as the Managing Director of Defendant ECI and as the individual directly initiating and/or indirectly condoning the illegal discriminatory and retaliatory conduct complained of herein. *E.g. Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 284–85 (D.D.C. 2008); *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 73 (D.D.C. 2012).

198.     Plaintiff was an employee of Defendant Kelley.

199.    As an employee of Defendant Kelley, Plaintiff was entitled to the protections of the District of Columbia Human Rights Act, D.C. Code § 2–1402.11, ("DCHRA"), which prohibits discrimination against an individual on the basis of their disability.

200.    At all times relevant to this action, Plaintiff was disabled within the meaning of the DCHRA.  D.C. Code § 2–1401.02(5A).  Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of prolonged walking or running, and constitutes a disability within the meaning of the DCHRA.

201.    At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

202.    Defendant Kelley had notice of Plaintiff's disability.

203.    On May 16, 2017, Plaintiff suffered a materially adverse employment action when Defendant Kelley terminated Plaintiff from his position at ECI as a canine handler.

204.    As a result of Plaintiff's disability, Defendant Kelley took adverse action against him by terminating his employment in violation of the DCHRA.

205.    Defendant Kelley knowingly and purposefully terminated Plaintiff from his position as a canine handler with ECI on the basis of Plaintiff's disability in bad faith.

206.    As a further direct and legal result of Defendant Kelley's conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

207.    Defendant Kelley's actions directly and proximately caused all injuries and damages sought herein.

208.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.       That the Court enter judgment in favor of Plaintiff and against Defendant Kelley;

b.       That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.       That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.       That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.       That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT SEVEN
**(Defendant Explosive Countermeasures International, Inc.)**
**Unlawful Discrimination – Prior Military Service**
**Uniformed Services Employment and Reemployment Rights Act of 1994 – 38 U.S.C. § 4311**

209.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

210.    As an employee of Defendant ECI, Plaintiff was entitled to the protections of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4311, ("USERRA"), which prohibits discrimination against an individual on the basis of their prior military service.

211.    Plaintiff is a former service-member of the United States Air Force, ("Air Force"), and the United States Navy, ("Navy").

212.    Plaintiff was deployed by the Navy to combat zones in Afghanistan as a canine handler.  During Plaintiff's tour of duty in Afghanistan, Plaintiff was injured while on patrol when an enemy improvised explosive device, ("IED"), detonated in close proximity.

34

213.    The explosion caused significant damage to Plaintiff's right knee and back, which impeded and impaired his ability to move, stand, walk/run long distances, sit, lift, and bend.  Due to the injuries, Plaintiff walks with a limp and experiences pain in his leg and back after prolonged periods of walking, running, or being on his feet.

214.    Defendant ECI had notice and actual knowledge of Plaintiff's service in the military at the commencement, or shortly thereafter, of his employment with the company.

215.    At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

216.    On or around the end of 2016, Plaintiff did not receive a year-end bonus from Defendant ECI despite meeting and/or exceeding his performance expectations as a canine handler.

217.    Plaintiff did not receive a year-end bonus because he was a disabled veteran who had been previously deployed.

218.    Defendant ECI paid two recently hired employees, J.T. and Andrew, who had been in ECI's employ for *less than* one month, year-end bonuses for 2016.  Neither J.T. nor Andrew were disabled veterans nor had either been previously deployed to a combat zone

219.    On May 16, 2017, Plaintiff suffered a materially adverse employment action when Defendant ECI terminated Plaintiff's employment.

220.    On the basis of Plaintiff's military service and deployment to Afghanistan, Defendant ECI, by and through the conduct of its agent(s), willfully took adverse action against Plaintiff by denying him a year-end bonus in 2016 and terminating his employment in violation of USERRA.

221.    Defendant ECI, by and through the conduct of its agent(s), knowingly and purposefully failed to pay to Plaintiff a year-end bonus in 2016 and terminated Plaintiff from his position as a canine handler with ECI on the basis of Plaintiff's military service and deployment to Afghanistan in bad faith.

222.    As a further direct and legal result of Defendant ECI's conduct, by and through the conduct of its agent(s), Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

223.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

224.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, liquidated damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.      That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.      That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.      That the Court award Plaintiff liquidated damages in an amount to be proven at trial;

d.      That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT EIGHT
### (Defendant Megan Kelley)

**Unlawful Discrimination – Prior Military Service**
**Uniformed Services Employment and Reemployment Rights Act of 1994 – 38 U.S.C. § 4311**

225.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

226.    Defendant Kelley is an "employer" within the meaning of USERRA, 38 U.S.C. § 4303(4), in her capacity as the Managing Director of ECI, acting as a delegee of the company's decision making authority, had the power to hire and fire employees. *E.g.*, *Bello v. Vill. of Skokie*, 151 F. Supp. 3d 849, 858–59 (N.D. Ill. 2015) ("The plain text of USERRA's definition of an 'employer' reflects that an individual, whether acting on his own behalf or as a delegee of decision making authority, can be held liable"); *accord Mace v. Willis*, 259 F. Supp. 3d 1007, 1022–23 (D.S.D. 2017).

227.    Plaintiff was an employee of Defendant Kelley.

228.    As an employee of Defendant Kelley, Plaintiff was entitled to the protections of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4311, ("USERRA"), which prohibits discrimination against an individual on the basis of their prior military service.

229.    Plaintiff is a former service-member of the United States Air Force, ("Air Force"), and the United States Navy, ("Navy").

230.    Plaintiff was deployed by the Navy to combat zones in Afghanistan as a canine handler.  During Plaintiff's tour of duty in Afghanistan, Plaintiff was injured while on patrol when an enemy improvised explosive device, ("IED"), detonated in close proximity.

231.    The explosion caused significant damage to Plaintiff's right knee and back, which impeded and impaired his ability to move, stand, and walk/run long distances.  Due to the injuries,

Plaintiff walks with a limp and experiences pain in his leg and back after prolonged periods of walking, running, or being on his feet.

232.   Defendant Kelley had notice and actual knowledge of Plaintiff's service in the military at the commencement, or shortly thereafter, of his employment with ECI.

233.   At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

234.   On or around the end of 2016, Plaintiff did not receive a year-end bonus despite meeting and/or exceeding his performance expectations as a canine handler.

235.   Plaintiff did not receive a year-end bonus because he was a disabled veteran who had been previously deployed.

236.   Defendant Kelley paid two recently hired employees, J.T. and Andrew, who had been in ECI's employ for *less than* one month, year-end bonuses for 2016.  Neither J.T. nor Andrew were disabled veterans nor had either been previously deployed to a combat zone

237.   On May 16, 2017, Plaintiff suffered a materially adverse employment action when Defendant Kelley terminated Plaintiff's employment with ECI.

238.   On the basis of Plaintiff's military service and deployment to Afghanistan, Defendant Kelley willfully took adverse action against Plaintiff by denying him a year-end bonus in 2016 and terminating his employment with ECI in violation of USERRA.

239.   Defendant Kelley knowingly and purposefully failed to pay Plaintiff a year-end bonus in 2016 and terminated Plaintiff from his position as a canine handler with ECI on the basis of Plaintiff's military service and deployment to Afghanistan in bad faith.

240. As a further direct and legal result of Defendant Kelley's conduct Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

241. Defendant Kelley's actions directly and proximately caused all injuries and damages sought herein.

242. As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, liquidated damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a. That the Court enter judgment in favor of Plaintiff and against Defendant Kelley;

b. That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c. That the Court award Plaintiff liquidated damages in an amount to be proven at trial;

d. That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e. That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT NINE
**(Defendant Explosive Countermeasures International, Inc.)**
**Unlawful Retaliation for Requesting Reasonable Accommodations**
**Americans with Disabilities Act of 1990 – 42 U.S.C. § 12203(a)**

243. Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

244. As an employee of Defendant ECI, Plaintiff was entitled to the protections of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act

Amendments Act of 2008, 42 U.S.C. § 12112(a), ("ADAAA"), which prohibits retaliation against an employee who, in good faith, requests accommodation for a qualifying disability. *Ellis v. Georgetown Univ. Hospital*, 631 F. Supp. 2d 71, 77 (D.D.C. 2009) ("Requests for accommodation are 'protected activities' within the meaning of the ADA"); *Floyd v. Lee*, 968 F. Supp. 2d 308, 331–33 (D.D.C. 2016) (same).

245.    At all times relevant to this action, Plaintiff was disabled within the meaning of the ADAAA, 42 U.S.C. § 12102(1)(A).  Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of prolonged walking or running, and constitutes a disability within the meaning of the ADAAA.

246.    At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

247.    Defendant ECI had notice of Plaintiff's disability.

248.    Plaintiff engaged in protected activity.

249.    On or around February 2017, shortly after being assigned to work at the Kennedy Center, Plaintiff contacted Defendant Kelley and specifically discussed with her that due to his knee and back injuries (*i.e.*, disability) he would be unable to perform the periods of prolonged standing and walking this assignment would require without taking a short break.

250.    Plaintiff asked Defendant Kelley to accommodate his disability by modifying his position so that he could take a break after prolonged periods of walking and/or standing, or reassign him to another worksite in ECI's portfolio where he could perform his duties as a canine handler and not have to spend prolonged periods of time walking or being on his feet without a short break. Plaintiff's previous assignment at the IRS building in New Carrolton, Maryland, was one such position.

251. On or about May 15, 2017, Defendant ECI denied Plaintiff's request for a reasonable accommodation.

252. Plaintiff suffered a materially adverse employment action.

253. On May 16, 2017, Defendant ECI terminated Plaintiff from his position as a canine handler.

254. As a result of Plaintiff's disability and request for accommodation thereof, Defendant ECI took adverse action against Plaintiff by terminating his employment in violation of the ADAAA.

255. Defendant ECI knowingly and purposefully terminated Plaintiff from his position as a canine handler on the basis of his disability and request for reasonable accommodation thereof in bad faith.

256. As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

257. Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

258. As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a. That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b. That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c. That the Court award Plaintiff punitive damages in an amount to be proven at trial;

d.      That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT TEN
### (Defendant Explosive Countermeasures International, Inc.)
### Unlawful Retaliation for Requesting Reasonable Accommodations
### District of Columbia Human Rights Act – D.C. Code § 2–1402.61

259.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

260.    As an employee of Defendant ECI, Plaintiff was entitled to the protections of the District of Columbia Human Rights Act, D.C. Code § 2–1402.61, ("DCHRA"), which prohibits retaliation against an employee who, in good faith, requests accommodation for a qualifying disability. *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 89–90 (D.D.C. 2016).

261.    At all times relevant to this action, Plaintiff was disabled within the meaning of the DCHRA.  D.C. Code § 2–1401.02(5A).  Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of prolonged walking, running, standing, sitting, lifting, and bending and constitutes a disability within the meaning of the DCHRA.

262.    At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

263.    Defendant ECI had notice of Plaintiff's disability.

264.    Plaintiff engaged in protected activity.

265.    On or around February 2017, shortly after being assigned to work at the Kennedy Center, Plaintiff contacted Defendant Kelley and specifically discussed with her that due to his

42

knee and back injuries (*i.e.*, disability) he would be unable to perform the periods of prolonged standing and walking this assignment would require without taking a short break.

266.    Plaintiff asked Defendant Kelley to accommodate his disability by modifying his position so that he could take a break after prolonged periods of walking and/or standing, or reassign him to another worksite in ECI's portfolio where he could perform his duties as a canine handler and not have to spend prolonged periods of time walking or being on his feet without a short break. Plaintiff's previous assignment at the IRS building in New Carrolton, Maryland, was one such position.

267.    On or about May 15, 2017, Defendant ECI denied Plaintiff's request for a reasonable accommodation.

268.    Plaintiff suffered a materially adverse employment action.

269.    On May 16, 2017, Defendant ECI terminated Plaintiff from his position as a canine handler.

270.    As a result of Plaintiff's disability and request for accommodation thereof, Defendant ECI took adverse action against Plaintiff by terminating his employment in violation of the DCHRA.

271.    Defendant ECI knowingly and purposefully terminated Plaintiff from his position as a canine handler on the basis of his disability and request for reasonable accommodation thereof in bad faith.

272.    As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

273.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

274.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.      That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.      That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.      That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.      That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT ELEVEN
**(Defendant Megan Kelley)**
**Unlawful Retaliation for Requesting Reasonable Accommodations**
**District of Columbia Human Rights Act – D.C. Code § 2–1402.61**

275.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

276.    Defendant Kelley is an "employer" within the meaning of the DCHRA, D.C. Code § 2–1401.02(10), as a "person acting in the interest of [an] employer," in her capacity as the Managing Director of Defendant ECI and as the individual directly initiating and/or indirectly condoning the illegal discriminatory and retaliatory conduct complained of herein. *E.g. Zelaya v.*

*UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 284–85 (D.D.C. 2008); *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 73 (D.D.C. 2012).

277.   Plaintiff was an employee of Defendant Kelley.

278.   As an employee of Defendant Kelley, Plaintiff was entitled to the protections of the District of Columbia Human Rights Act, D.C. Code § 2–1402.61, ("DCHRA"), which prohibits retaliation against an employee who, in good faith, requests accommodation for a qualifying disability. *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 89–90 (D.D.C. 2016).

279.   At all times relevant to this action, Plaintiff was disabled within the meaning of the DCHRA.  D.C. Code § 2–1401.02(5A).  Plaintiff suffered from musculoskeletal injuries to his legs and back that impaired the major life activity of prolonged walking, running, standing, sitting, lifting, and bending and constitutes a disability within the meaning of the DCHRA.

280.   At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

281.   Defendant Kelley had notice of Plaintiff's disability.

282.   Plaintiff engaged in protected activity.

283.   On or around February 2017, shortly after being assigned to work at the Kennedy Center, Plaintiff contacted Defendant Kelley and specifically discussed with her that due to his knee and back injuries (*i.e.*, disability) he would be unable to perform the periods of prolonged standing and walking this assignment would require without taking a short break.

284.   Plaintiff asked Defendant Kelley to accommodate his disability by modifying his position so that he could take a break after prolonged periods of walking and/or standing, or reassign him to another worksite in ECI's portfolio where he could perform his duties as a canine handler and not have to spend prolonged periods of time walking or being on his feet without a

short break. Plaintiff's previous assignment at the IRS building in New Carrolton, Maryland, was one such position.

285.    On or about May 15, 2017, Defendant Kelley denied Plaintiff's request for a reasonable accommodation.

286.    Plaintiff suffered a materially adverse employment action.

287.    On May 16, 2017, Defendant Kelley terminated Plaintiff from his position as a canine handler at ECI.

288.    As a result of Plaintiff's disability and request for accommodation thereof, Defendant Kelley took adverse action against Plaintiff by terminating his employment in violation of the DCHRA.

289.    Defendant Kelley knowingly and purposefully terminated Plaintiff from his position as a canine handler on the basis of his disability and request for reasonable accommodation thereof in bad faith.

290.    As a further direct and legal result of Defendant Kelley's conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

291.    Defendant Kelley's actions directly and proximately caused all injuries and damages sought herein.

292.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant Kelley;

b.    That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.    That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.    That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.    That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT TWELVE
### (Defendant Explosive Countermeasures International, Inc.)
### Unlawful Retaliation
### Fair Labor Standards Act – 29 U.S.C. § 215(3)

293.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

294.    As an employee of Defendant ECI, Plaintiff was entitled to the protections of the Fair Labor Standards Act, 29 U.S.C. § 215(3), ("FLSA"), which prohibits retaliation against an employee who, in good faith, asserts rights under the statute.

295.    At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

296.    Plaintiff engaged in protected activity.

297.    On or around January or February 2017, Plaintiff filed a complaint with the United States Department of Labor, ("DOL"), Case No.: 1849497, concerning Defendant ECI's willful failure to pay wages and willful failure to reimburse Plaintiff for business expenses incurred caring for his service animal and the company-owned vehicle, in violation of the FLSA.

298.    The DOL's investigation into Plaintiff's complaint remains pending.

47

299.   Defendant Kelley was notified of the DOL's investigation into Plaintiff's complaint of unpaid wages and became upset with Plaintiff for having filed a complaint with the DOL concerning Defendant ECI's willful violations of the FLSA.

300.   On or about late April or early May 2017, the DOL contacted Plaintiff and requested that he appear for an interview regarding his complaint of ECI's willful failure to pay him wages, in violation of the FLSA.

301.   On or about May 5, 2017, Defendant Kelley contacted Plaintiff by phone and attempted to intimidate him in advance of his interview with the DOL and dissuade him from providing truthful statements to DOL investigators.  Specifically, Defendant Kelley attempted to coerce Plaintiff to provide the DOL with false statements concerning Defendant ECI's failure to pay wages, namely that Defendant ECI was in compliance with all wage and hour requirements.

302.   Plaintiff suffered a materially adverse employment action.

303.   On May 16, 2017, Defendant ECI terminated Plaintiff from his position as a canine handler.

304.   On the basis of Plaintiff's complaint to the DOL concerning Defendant ECI's willful failure to pay wages in violation of the FLSA, Defendant ECI, by and through the conduct of its agent(s), took adverse action against Plaintiff.

305.   Defendant ECI, by and through the conduct of its agent(s), retaliated against Plaintiff for having engaged in protected activity under the FLSA.

306.   As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

307.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

308.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.    That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.    That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.    That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.    That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

**COUNT THIRTEEN**
**(Defendant Megan Kelley)**
**Unlawful Retaliation**
**Fair Labor Standards Act – 29 U.S.C. § 215(3)**

309.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

310.    Defendant Kelley is an "employer" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), ("FLSA"), as a "person acting directly or indirectly in the interest of an employer" in her capacity as the Managing Director of Defendant ECI as the individual who exercised operational control over Defendant ECI.  *E.g.*, *Amaya v. Logo Enters., LLC*, 251 F. Supp. 3d 196, 200 (D.D.C. 2017) ("Typically, an individual who exercises operational control over an

49

employee's wages, hours, and terms of employment qualifies as an 'employer,' and is subject to individual liability [under the FLSA]") (internal citations and quotations omitted).

311.    Plaintiff was an employee of Defendant Kelley.

312.    As an employee of Defendant Kelley, Plaintiff was entitled to the protections of the Fair Labor Standards Act, 29 U.S.C. § 215(3), ("FLSA"), which prohibits retaliation against an employee who, in good faith, asserts rights under the statute.

313.     At all times relevant to this action, Plaintiff was meeting or exceeding his job requirements as a canine handler at ECI.

314.    Plaintiff engaged in protected activity.

315.    On or around January or February 2017, Plaintiff filed a complaint with the United States Department of Labor, ("DOL"), Case No.: 1849497, concerning Defendant ECI's willful failure to pay wages and willful failure to reimburse Plaintiff for business expenses incurred caring for his service animal and the company-owned vehicle, in violation of the FLSA.

316.    The DOL's investigation into Plaintiff's complaint remains pending.

317.     Defendant Kelley was notified of the DOL's investigation into Plaintiff's complaint of unpaid wages and became upset with Plaintiff for having filed a complaint with the DOL concerning Defendant ECI's willful violations of the FLSA.

318.    On or about late April or early May 2017, the DOL contacted Plaintiff and requested that he appear for an interview regarding his complaint of ECI's willful failure to pay to him wages, in violation of the FLSA.

319.    On or about May 5, 2017, Defendant Kelley contacted Plaintiff by phone and attempted to intimidate him in advance of his interview with the DOL and dissuade him from providing truthful statements to DOL investigators.  Specifically, Defendant Kelley attempted to

coerce Plaintiff to provide the DOL with false statements concerning Defendant ECI's failure to pay wages, namely that Defendant ECI was in compliance with all wage and hour requirements.

320.    Plaintiff suffered a materially adverse employment action.

321.    On May 16, 2017, Defendant Kelley terminated Plaintiff from his position at ECI as a canine handler.

322.    On the basis of Plaintiff's complaint to the DOL concerning Defendant ECI's willful failure to pay wages, in violation of the FLSA, Defendant Kelley took adverse action against Plaintiff.

323.    Defendant Kelley retaliated against Plaintiff for having engaged in protected activity under the FLSA.

324.    As a further direct and legal result of Defendant Kelley's conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

325.    Defendant Kelley's actions directly and proximately caused all injuries and damages sought herein.

326.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.      That the Court enter judgment in favor of Plaintiff and against Defendant Kelley;

b.      That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.      That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.      That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT FOURTEEN
**(Defendant Explosive Countermeasures International, Inc.)**
**Unlawful Retaliation – Post-Termination for Filing DOL Complaint**
**Fair Labor Standards Act – 29 U.S.C. § 215(3)**

327.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

328.    As an employee of Defendant ECI, Plaintiff was entitled to the protections of the Fair Labor Standards Act, 29 U.S.C. § 215(3), ("FLSA"), which prohibits retaliation against an employee who, in good faith, asserts rights under the statute.

329.    Plaintiff engaged in protected activity.

330.    On or around January or February 2017, Plaintiff filed a complaint with the United States Department of Labor, ("DOL"), Case No.: 1849497, concerning Defendant ECI's willful failure to pay wages and willful failure to reimburse Plaintiff for business expenses incurred caring for his service animal and the company-owned vehicle, in violation of the FLSA.

331.    The DOL's investigation into Plaintiff's complaint remains pending.

332.     Defendant Kelley was notified of the DOL's investigation into Plaintiff's complaint of unpaid wages and became upset with Plaintiff for having filed a complaint with the DOL concerning Defendant ECI's willful violations of the FLSA.

333.    On or about late April or early May 2017, the DOL contacted Plaintiff and requested that he appear for an interview regarding his complaint of ECI's willful failure to pay to him wages, in violation of the FLSA.

334.     On or about May 5, 2017, Defendant Kelley contacted Plaintiff by phone and attempted to intimidate him in advance of his interview with the DOL and dissuade him from providing truthful statements to DOL investigators.  Specifically, Defendant Kelley attempted to coerce Plaintiff to provide the DOL with false statements concerning Defendant ECI's failure to pay wages, namely that Defendant ECI was in compliance with all wage and hour requirements.

335.     On May 16, 2017, Defendant ECI terminated Plaintiff from his position as a canine handler.

336.     Defendant ECI continues to retaliate against Plaintiff after his termination from employment.

337.     Specifically, following his termination from employment with ECI, Defendant ECI has maliciously and purposefully impeded Plaintiff from obtaining suitable reemployment in knowing bad faith.

338.     On or about May 2017, Plaintiff applied to a position with the United States Department of State, ("State Department"). The position required Plaintiff to submit to a background investigation.

339.     During the Government's background investigation, Defendant Kelley, on behalf of Defendant ECI, provided a negative reference to Government investigator(s) concerning Plaintiff's employment with ECI.  Defendant Kelley stated to the Government investigator(s) that Plaintiff was "not trustworthy" and was a "dangerous driver."

340.     Defendant Kelley made these statements regarding Plaintiff to Government investigators in bad faith, knowing falsity, and in retaliation for having previously engaged in protected activity under the FLSA.

341.    On or about May 10, 2018, Plaintiff was informed that he would not be hired for the position with the State Department.

342.    On or about April 30, 2018, Plaintiff applied for a position with the United States Department of Defense, ("DOD"). This position also required Plaintiff to submit to a background investigation.

343.    During the Government's background investigation, Defendant Kelley, on behalf of ECI, provided another negative reference to Government investigator(s) concerning Plaintiff's employment with ECI.

344.    On or around May 2018, Plaintiff was informed that he would not be hired for the position with the DOD.

345.    Plaintiff remains unemployed as a result of Defendant ECI's continued retaliation against him for having previously engaged in FLSA protected activity.

346.    Defendant ECI, by and through the conduct of its agent(s), retaliated against Plaintiff for having engaged in protected activity under the FLSA.

347.    As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

348.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

349.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.      That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.      That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.      That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT FIFTEEN
**(Defendant Megan Kelley)**
**Unlawful Retaliation**
**Fair Labor Standards Act – 29 U.S.C. § 215(3)**

350.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

351.    Defendant Kelley is an "employer" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), ("FLSA"), as a "person acting directly or indirectly in the interest of an employer" in her capacity as the Managing Director of Defendant ECI as the individual who exercised operational control over Defendant ECI. *E.g.*, *Amaya v. Logo Enters., LLC*, 251 F. Supp. 3d 196, 200 (D.D.C. 2017) ("Typically, an individual who exercises operational control over an employee's wages, hours, and terms of employment qualifies as an 'employer,' and is subject to individual liability [under the FLSA]") (internal citations and quotations omitted).

352.    Plaintiff was an employee of Defendant Kelley.

353.    As an employee of Defendant Kelley, Plaintiff was entitled to the protections of the Fair Labor Standards Act, 29 U.S.C. § 215(3), ("FLSA"), which prohibits retaliation against an employee who, in good faith, asserts rights under the statute.

354.    Plaintiff engaged in protected activity.

355.    On or around January or February 2017, Plaintiff filed a complaint with the United States Department of Labor, ("DOL"), Case No.: 1849497, concerning Defendant ECI's willful failure to pay wages and willful failure to reimburse Plaintiff for business expenses incurred caring for his service animal and the company-owned vehicle, in violation of the FLSA.

356.    The DOL's investigation into Plaintiff's complaint remains pending.

357.    Defendant Kelley was notified of the DOL's investigation into Plaintiff's complaint of unpaid wages and became upset with Plaintiff for having filed a complaint with the DOL concerning Defendant ECI's willful violations of the FLSA.

358.    On or about late April or early May 2017, the DOL contacted Plaintiff and requested that he appear for an interview regarding his complaint of ECI's willful failure to pay him wages, in violation of the FLSA.

359.    On or about May 5, 2017, Defendant Kelley contacted Plaintiff by phone and attempted to intimidate him in advance of his interview with the DOL and dissuade him from providing truthful statements to DOL investigators.  Specifically, Defendant Kelley attempted to coerce Plaintiff to provide the DOL with false statements concerning Defendant ECI's failure to pay wages, namely that Defendant ECI was in compliance with all wage and hour requirements.

360.    On May 16, 2017, Defendant Kelley terminated Plaintiff from his position at ECI as a canine handler.

361.    Defendant Kelley continues to retaliate against Plaintiff after his termination from employment.

362.   Specifically, following his termination from employment with ECI, Defendant Kelley has maliciously and purposefully impeded Plaintiff from obtaining suitable reemployment in knowing bad faith.

363.   On or about May 2017, Plaintiff applied to a position with the United States Department of State, ("State Department"). The position required Plaintiff to submit to a background investigation.

364.   During the Government's background investigation, Defendant Kelley, on behalf of Defendant ECI, provided a negative reference to Government investigator(s) concerning Plaintiff's employment with ECI.  Defendant Kelley stated to the Government investigator(s) that Plaintiff was "not trustworthy" and was a "dangerous driver."

365.   Defendant Kelley made these statements regarding Plaintiff to Government investigators in bad faith, knowing falsity, and in retaliation for having previously engaged in protected activity under the FLSA.

366.   On or about May 10, 2018, Plaintiff was informed that he would not be hired for the position with the State Department.

367.   On or about April 30, 2018, Plaintiff applied for a position with the United States Department of Defense, ("DOD"). This position also required Plaintiff to submit to a background investigation.

368.   During the Government's background investigation, Defendant Kelley, on behalf of ECI, provided another negative reference to Government investigator(s) concerning Plaintiff's employment with ECI.

369.   On or around May 2018, Plaintiff was informed that he would not be hired for the position with the DOD.

370.    Plaintiff remains unemployed as a result of Defendant Kelley's continued retaliation against him for having previously engaged in FLSA protected activity.

371.    Defendant Kelley retaliated against Plaintiff for having engaged in protected activity under the FLSA.

372.    As a further direct and legal result of Defendant Kelley's conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

373.    Defendant Kelley's actions directly and proximately caused all injuries and damages sought herein.

374.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.      That the Court enter judgment in favor of Plaintiff and against Defendant Kelley;

b.      That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.      That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.      That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.      That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

**COUNT SIXTEEN**
**(Defendant Explosive Countermeasures International, Inc.)**
**Unlawful Retaliation – Post-Termination for Filing Charge with EEOC**
**Americans with Disabilities Act of 1990 – 42 U.S.C. § 12203(a)**

375.　Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

376.　As an employee of Defendant ECI, Plaintiff was entitled to the protections of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12112(a), ("ADAAA"), which prohibits retaliation against an employee who, in good faith, makes a charge concerning unlawful discrimination or retaliation prohibited by the ADAAA.

377.　On May 16, 2017, Defendant ECI terminated Plaintiff from his position as a canine handler.

378.　Defendant ECI terminated his position on the basis of Plaintiff's disability and request for reasonable accommodations, in violation of the ADAAA.

379.　On November 8, 2017, Mr. Moland filed a Charge of Discrimination with the EEOC alleging unlawful disability-based discrimination and unlawful failure to accommodate his known disability, in violation of the ADAAA.

380.　Defendant ECI continues to retaliate against Plaintiff after his termination from employment.

381.　Specifically, following his termination from employment with ECI, Defendant ECI has maliciously and purposefully impeded Plaintiff from obtaining suitable reemployment in knowing bad faith.

382.     On or about May 2017, Plaintiff applied to a position with the United States Department of State, ("State Department"). The position required Plaintiff to submit to a background investigation.

383.     During the Government's background investigation, Defendant Kelley, on behalf of Defendant ECI, provided a negative reference to Government investigator(s) concerning Plaintiff's employment with ECI.  Defendant Kelley stated to the Government investigator(s) that Plaintiff was "not trustworthy" and was a "dangerous driver."

384.     Defendant Kelley made these statements regarding Plaintiff to Government investigators in bad faith, knowing falsity, and in retaliation for having filed a complaint with the EEOC concerning violations of the ADAAA.

385.     On or about May 10, 2018, Plaintiff was informed that he would not be hired for the position with the State Department.

386.     On or about April 30, 2018, Plaintiff applied for a position with the United States Department of Defense, ("DOD"). This position also required Plaintiff to submit to a background investigation.

387.     During the Government's background investigation, Defendant Kelley, on behalf of ECI, provided another negative reference to Government investigator(s) concerning Plaintiff's employment with Defendant ECI.

388.     On or around May 2018, Plaintiff was informed that he would not be hired for the position with the DOD.

389.     Plaintiff remains unemployed as a result of Defendant ECI's continued retaliation against him for having previously engaged in ADAAA protected activity.

390.    Defendant ECI, by and through the conduct of its agent(s), retaliated against Plaintiff for having filed a Charge of Discrimination with the EEOC concerning Defendant's unlawful discrimination and failure to grant reasonable accommodations, in violation of the ADAAA.

391.    As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

392.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

393.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.    That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.    That the Court award Plaintiff punitive damages in an amount to be proven at trial;

d.    That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.    That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

**COUNT SEVENTEEN**
**(Defendant Explosive Countermeasures International, Inc.)**
**Unlawful Retaliation – Post-Termination for Filing Charge with DCOHR**
**District of Columbia Human Rights Act – D.C. Code § 2–1402.61**

394.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

395.     As an employee of Defendant ECI, Plaintiff was entitled to the protections of the District of Columbia Human Rights Act, D.C. Code § 2–1402.61, ("DCHRA"), which prohibits retaliation against an employee who, in good faith, makes a charge concerning unlawful discrimination or retaliation prohibited by the DCHRA.

396.     On May 16, 2017, Defendant ECI terminated Plaintiff from his position as a canine handler.

397.     On November 8, 2017, Plaintiff filed a Charge of Discrimination with the EEOC alleging unlawful disability-based discrimination, unlawful failure to accommodate his known disability, and unlawful retaliation in violation of the DCHRA.

398.     Pursuant to the EEOC's work-sharing agreement with the District of Columbia Office of Human Rights, ("DCOHR"), Plaintiff's Charge of Discrimination was cross-filed with the DCOHR.

399.     Defendant ECI continues to retaliate against Plaintiff after his termination from employment for having filed a Charge of Discrimination in violation of the DCHRA.

400.     Specifically, following his termination from employment with ECI, Defendant ECI has maliciously and purposefully impeded Plaintiff from obtaining suitable reemployment in knowing bad faith.

401.     On or about May 2017, Plaintiff applied to a position with the United States Department of State, ("State Department"). The position required Plaintiff to submit to a background investigation.

402.     During the Government's background investigation, Defendant Kelley, on behalf of Defendant ECI, provided a negative reference to Government investigator(s) concerning Plaintiff's employment with ECI.  Defendant Kelley stated to the Government investigator(s) that Plaintiff was "not trustworthy" and was a "dangerous driver."

403.     Defendant Kelley made these statements regarding Plaintiff to Government investigators in bad faith, knowing falsity, and in retaliation for having filed a complaint with the EEOC concerning violations of the DCHRA.

404.     On or about May 10, 2018, Plaintiff was informed that he would not be hired for the position with the State Department.

405.     On or about April 30, 2018, Plaintiff applied for a position with the United States Department of Defense, ("DOD"). This position also required Plaintiff to submit to a background investigation.

406.     During the Government's background investigation, Defendant Kelley, on behalf of ECI, provided another negative reference to Government investigator(s) concerning Plaintiff's employment with Defendant ECI.

407.     On or around May 2018, Plaintiff was informed that he would not be hired for the position with the DOD.

408.     Plaintiff remains unemployed as a result of Defendant ECI's continued retaliation against him for having previously engaged in DCHRA protected activity.

409.    Defendant ECI, by and through the conduct of its agent(s), retaliated against Plaintiff for having filed a Charge of Discrimination concerning Defendant's unlawful discrimination, failure to grant reasonable accommodations, and retaliation in violation of the DCHRA.

410.    As a further direct and legal result of Defendant ECI and its agents' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

411.    Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

412.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.    That the Court enter judgment in favor of Plaintiff and against Defendant ECI;

b.    That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.    That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.    That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.    That this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

**COUNT EIGHTEEN**
**(Defendant Megan Kelley)**
**Unlawful Retaliation – Post-Termination for Filing Charge with DCOHR**
**District of Columbia Human Rights Act – D.C. Code § 2–1402.61**

413.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

414.     Defendant Kelley is an "employer" within the meaning of the DCHRA, D.C. Code § 2–1401.02(10), as a "person acting in the interest of [an] employer," in her capacity as the Managing Director of Defendant ECI and as the individual directly initiating and/or indirectly condoning the illegal discriminatory and retaliatory conduct complained of herein. *E.g. Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 284–85 (D.D.C. 2008); *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 73 (D.D.C. 2012).

415.     Plaintiff was an employee of Defendant Kelley.

416.     As an employee of Defendant Kelley, Plaintiff was entitled to the protections of the District of Columbia Human Rights Act, D.C. Code § 2–1402.61, ("DCHRA"), which prohibits retaliation against an employee who, in good faith, makes a charge concerning unlawful discrimination or retaliation prohibited by the DCHRA.

417.     On May 16, 2017, Defendant Kelley terminated Plaintiff from his position as a canine handler.

418.     On November 8, 2017, Plaintiff filed a Charge of Discrimination with the EEOC alleging unlawful disability-based discrimination, unlawful failure to accommodate his known disability, and unlawful retaliation in violation of the DCHRA.

419.     Pursuant to the EEOC's work-sharing agreement with the District of Columbia Office of Human Rights, ("DCOHR"), Plaintiff's Charge of Discrimination was cross-filed with the DCOHR.

420.    Defendant Kelley continues to retaliate against Plaintiff after his termination from employment for having filed a Charge of Discrimination, in violation of the DCHRA.

421.    Specifically, following his termination from employment with ECI, Defendant Kelley has maliciously and purposefully impeded Plaintiff from obtaining suitable reemployment in knowing bad faith.

422.    On or about May 2017, Plaintiff applied to a position with the United States Department of State, ("State Department"). The position required Plaintiff to submit to a background investigation.

423.    During the Government's background investigation, Defendant Kelley, on behalf of Defendant ECI, provided a negative reference to Government investigator(s) concerning Plaintiff's employment with ECI.  Defendant Kelley stated to the Government investigator(s) that Plaintiff was "not trustworthy" and was a "dangerous driver."

424.    Defendant Kelley made these statements regarding Plaintiff to Government investigators in bad faith, knowing falsity, and in retaliation for having filed a complaint with the EEOC concerning violations of the DCHRA.

425.    On or about May 10, 2018, Plaintiff was informed that he would not be hired for the position with the State Department.

426.    On or about April 30, 2018, Plaintiff applied for a position with the United States Department of Defense, ("DOD"). This position also required Plaintiff to submit to a background investigation.

427.    During the Government's background investigation, Defendant Kelley, on behalf of ECI, provided another negative reference to Government investigator(s) concerning Plaintiff's employment with Defendant ECI.

428.     On or around May 2018, Plaintiff was informed that he would not be hired for the position with the DOD.

429.     Plaintiff remains unemployed as a result of Defendant Kelley's continued retaliation against him for having previously engaged in DCHRA protected activity.

430.     Defendant Kelley, retaliated against Plaintiff for having filed a Charge of Discrimination concerning Defendants' unlawful discrimination, failure to grant reasonable accommodations, and retaliation in violation of the DCHRA.

431.     As a further direct and legal result of Defendant Kelley's conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

432.     Defendant ECI's actions directly and proximately caused all injuries and damages sought herein.

433.     As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, punitive damages, litigation costs, and his reasonable attorneys' fees.

WHEREFORE, Plaintiff demands:

a.     That the Court enter judgment in favor of Plaintiff and against Defendant Kelley;

b.     That the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial;

c.     That the Court award Plaintiff punitive damages in an amount to be proven at trial but in no event less than $1,000,000.00;

d.     That the Court award Plaintiff his reasonable attorneys' fees and costs incurred in this litigation; and

e.      That this Court award Plaintiff such further and additional relief as the nature of the

case may require and which this Honorable Court shall deem just and proper.

### **JURY TRIAL DEMAND**

Plaintiff demands a trial by a jury of his peers on all counts so triable.


DATED: September 28, 2018

Respectfully submitted,

JOSEPH GREENWALD & LAAKE, P.A.


_/s/Brian J. Markovitz_____
Brian J. Markovitz (Bar No. DC481517)
Mathew E. Kreiser (Bar No. MD0053)
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)
bmarkovitz@jgllaw.com
mkreiser@jgllaw.com

*Counsel for Plaintiff William Moland*