UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| WILLIAM MOLAND, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-2263 (RC) |
| | : | | |
| v. | : | Re Document No.: | 3 |
| | : | | |
| EXPLOSIVE COUNTERMEASURES INTERNATIONAL, INC., *et al.* | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION TO TRANSFER; DENYING PLAINTIFF'S MOTION TO AMEND

### I. INTRODUCTION

Plaintiff William Moland brought this eighteen-claim suit against his former employer, Explosive Countermeasures International, Inc. ("Explosive Countermeasures"), and Megan Kelley, Explosive Countermeasures' Managing Director (collectively, "ECI"), for discrimination and retaliation he allegedly suffered both while employed at ECI and after his termination. Moland alleges that ECI discriminated and retaliated against him on the basis of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201–12213, discriminated against him on the basis of his prior military service, in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301–4335, and retaliated against him for filing a complaint with the Department of Labor, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. Moland also brings several claims under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401–1404.

ECI has now filed a motion to transfer venue to the U.S. District Court for the Eastern District of Virginia, while Moland moves to amend his complaint in his opposition to the motion

for transfer.  Although the Court finds that the District of Columbia is a proper venue for most of Moland's ADA claims, it also finds that this district is an improper venue for Moland's USERRA claims, FLSA claims, and one of his ADA claims.  Because the Eastern District of Virginia provides a proper venue for all of Moland's federal claims, the Court grants ECI's motion to transfer the case to that district.  And because Moland's motion to amend fails to comply with its Local Rules, the Court denies that motion.

## II.  BACKGROUND

Moland is a Maryland resident with extensive prior military service.  Compl. ¶¶ 6, 12–15.  Moland served as a canine handler both in the United States Air Force between 1993 and 1997 and in the United States Navy between 2001 and 2008.  Id. ¶¶ 12–15.  While deployed in Afghanistan for the Navy, he was injured when an improvised explosive device ("IED") exploded in close proximity to him.  Id. ¶ 19.  The explosion left him with significant damage to his right knee and back, "imped[ing] and impair[ing] his ability to move, stand, and walk/run long distances" and causing him to "walk[] with a limp and experience[] pain in his leg and back after prolonged periods of walking, running, or being on his feet."  Id. ¶ 20.  After his service, Moland worked as a government contractor in Afghanistan, where he was injured a second time by another IED explosion.  Id. ¶ 23–25.  The second explosion worsened Moland's knee and back injuries.  Id. ¶ 25.

Between November 2015 and May 2016, Moland was employed as a government contractor by American K-9 Detection Services, LLC. ("AMK9"), and worked as a canine handler at an Internal Revenue Service's ("IRS") building in New Carrolton, Maryland.  Id. ¶¶ 28, 29.  In May 2016,  AMK9's contract to provide bomb detection services at the IRS building was acquired by Explosive Countermeasures, a Virginia-based company that provides

bomb detection and prevention services in Virginia, Maryland, and the District of Columbia. *Id.* ¶¶ 7, 31. Kelley, Explosive Countermeasures's Managing Director and also a Virginia resident, *id.* ¶ 8, contacted Moland the same month to inform him that the company would let him continue in his role as a canine handler at the IRS building, *id.* ¶¶ 33, 36.

Moland alleges that Kelley had a "negative, discriminatory attitude and animus towards disabled veterans and service members who had been previously deployed." *Id.* ¶ 42. In a phone conversation between Moland and Kelley in the fall of 2016, after Moland had recommended that Kelley hire a veteran who wore a prosthesis, Kelley allegedly stated that "she would not hire [the veteran] or any other former service member who had been previously deployed because they 'were all messed up in some way.'" *Id.* ¶¶ 38–40. At the end of 2016, Moland alleges that he did not receive a year-end bonus because he was a veteran. *Id.* ¶ 51.

In January 2017, Moland was reassigned from the New Carrolton IRS building to another worksite in West Virginia. *Id.* ¶ 52. Moland alleges that, following the move, ECI failed to pay him wages for his training and commuting time or to reimburse him for expenses he made to care for his service canine and maintain his service vehicle. *Id.* ¶ 53. As a result, he filed a complaint with the Department of Labor ("DOL") regarding the wages and reimbursements he believed he was owed. *Id.* ¶ 54. After Kelley was given notice of the ensuing DOL investigation, she "became upset with Mr. Moland for having filed a complaint," *id.* ¶ 56, and reassigned him to work at the Kennedy Center in the District of Columbia in February 2017, *id.* ¶ 57.

During his training for the position at the Kennedy Center, Moland learned that the position would require him to constantly be on his feet and to walk over eight miles a day without a break, an impossible task given his knee and back injuries. *Id.* ¶ 58. Moland asked

that Kelley accommodate his disability by reassigning him to work at another worksite where he would not have to walk or stand for extended periods of time, such as his previous assignment at the IRS building, *id.* ¶ 63, or by allowing him to take breaks while at the Kennedy Center worksite, *e.g.*, *id.* ¶¶ 65, 250.

After two months without any follow-up, Kelley eventually gave Moland a medical questionnaire for his physician to complete so that she could make a decision regarding the requested accommodation. *Id.* ¶ 67. In May 2017, upon learning that DOL had asked Moland to appear for an interview regarding ECI's failure to pay wages and reimbursements, Kelley called him and "attempted to intimidate him in advance of his interview." *Id.* ¶¶ 68–69. Shortly after receiving Moland's completed medical questionnaire, which stated that Moland could fully perform his duties if given an accommodation to rest for a limited period of time, Kelley informed him that ECI could not accommodate his disability. *Id.* ¶¶ 71, 73. On May 16, 2017, Kelley terminated Moland's employment with Explosive Countermeasures. *Id.* ¶ 76.

On November 8, 2017, Moland filed a complaint with the Equal Employment Opportunity Commission, "alleging unlawful disability-based discrimination, unlawful failure to accommodate his known disability, and unlawful retaliation." *Id.* ¶ 79. Even after his termination, Moland alleges that ECI continued to retaliate against him by impeding his ability to gain employment with the federal government. *Id.* ¶¶ 80–87. Moland asserts that Kelley made statements to investigators conducing a background check for a position he had applied for at the Department of State in "bad faith, [and] knowing falsity." *Id.* ¶¶ 82–84. Moland alleges that Kelley subsequently provided another negative reference for a Department of Defense position to which he applied. *Id.* ¶¶ 86–87.

On September 28, 2018, Moland brought suit for discrimination on the basis of disability and military status, and both retaliatory termination and post-termination retaliation for engaging in activity protected by the ADA and FLSA. *See* Compl. On November 12, 2018, ECI moved to transfer the case to the Eastern District of Virginia, claiming that venue in this district is improper. *See* Defs.' Mot. Transfer, ECF No. 3. Moland filed his opposition on November 26, 2018, Pl.'s Opp'n, ECF No. 5, and ECI filed a reply on December 3, 2018, Defs.' Reply, ECF No. 6.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) instructs a district court to dismiss or transfer a case when venue is improper. Fed. R. Civ. P. 12(b)(3). When considering such a motion, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, . . . [and] draws all reasonable inferences from those allegations in the plaintiff's favor." *James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (citing *2215 Fifth Street Assocs v. U-Haul Int'l Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001)). "To prevail on a motion to dismiss for improper venue . . . 'the defendant must present facts that will defeat the plaintiff's assertion of venue.'" *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013) (quoting *Slaby v. Holder*, 901 F. Supp. 2d 129, 132 (D.D.C. 2012)). The burden, however, remains on the plaintiff to prove that venue is proper when an objection is raised, because "it is the plaintiff's obligation to institute the action in a permissible forum." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

In addition, under 28 U.S.C. § 1406, the district court "shall dismiss, or if it be in the interest of justice, transfer . . . to any district or division in which it could have been brought" a case filed in the wrong division or district. 28 U.S.C. § 1406. "Whether transferring [a] case is

in the interest of justice rests within the sound discretion of the court," *Booz-Allen*, 227 F. Supp. 2d at 25 (citing *Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 665 (D.D.C. 1982)), but "the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal," *Ellis-Smith v. Sec'y of Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011).

## IV. ANALYSIS

ECI asserts that venue in the District of Columbia is improper under 28 U.S.C. § 1391(b), the general venue provision, because a substantial portion of the underlying events did not take place in the District. *See* Defs.' Mem. Supp. 3–4. Moland retorts that the District of Columbia is the proper venue for this case because it is a proper venue under the venue provision of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2000e-17. Pl.'s Opp'n 5 (citing 42 U.S.C. § 2000e-5(f)(3)). The Court disagrees.

"The traditional rule regarding venue is that venue must be appropriate for each claim." *Bartel v. Fed. Aviation Admin.*, 617 F. Supp. 190, 197 (D.D.C. 1985) (citation omitted). However, under the doctrine of pendent venue, courts "may exercise their discretion to hear claims at to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued." *Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009) (citing *Beattie v. United States*, 756 F.2d 91, 102–03 (D.C. Cir. 1984), *abrogated on other grounds by Smith v. United States*, 507 U.S. 197 (1993)).

Moland brings claims for disability-based discrimination, discriminatory failure to accommodate, retaliatory termination, and post-termination retaliation under the ADA, as well as claims under USERRA and the FLSA.[1] The Court reviews the proper venue for each of these

---

[1] The Court does not discuss Moland's DCHRA claims, which he brought under supplemental jurisdiction and which are not relevant to its discussion of venue. It does note however that, contrary to Defendants' assertion, *see* Defs.' Reply 2, Moland is not necessarily

claims in turn, and finds that the District of Columbia is a proper venue for some of the ADA claims but is an improper venue for one of Moland's ADA claims and for his USERRA and FLSA claims. While Moland does not squarely raise the issue, the Court then briefly reviews whether it can hear the improperly venued claims under pendent jurisdiction. Finding that it cannot, the Court next determines whether to transfer or dismiss the improperly venued claims under § 1406. Because it finds that the Eastern District of Virginia is a proper venue for all of Moland's claims and that the interests of justice are better served by transferring this entire case, the Court grants ECI's motion to transfer. Finally, the Court denies Moland's motion to amend the complaint.

### A. Only Some of Moland's ADA Claims Are Properly Venued

Moland brings four ADA claims against Explosive Countermeasures, for failure to accommodate, disability discrimination, retaliatory termination, and post-termination retaliation. He argues that Title VII provides the relevant venue provision for the claims and that they are properly venued in this district because he would have worked at the Kennedy Center in the District of Columbia but for ECI's discrimination. Pl.'s Opp'n 6–7. ECI retorts that Moland never worked at the Kennedy Center, nor would he have worked there had his requested accommodation been granted because he requested a transfer to his previous work site in Maryland. Defs.' Reply 2–4. Taking all inferences in the complaint in Moland's favor, the Court ultimately finds that Moland has plausibly alleged that he would have worked in this

---

precluded from asserting the DCHRA claims in the Eastern District of Virginia. Supplemental jurisdiction over state law claims does not hinge on whether the federal court is located in the state that provides the law for those claims. *See generally* 28 U.S.C. § 1367. And, as discussed below, Moland alleges that he was denied reasonable accommodation at, and terminated from, a position located in the District of Columbia.

district but for *some, but not all,* of Explosive Countermeasures's alleged acts of discrimination and retaliation, and thus that not all of his ADA claims are properly venued.

The proper venue for ADA claims is determined by Title VII's special venue provision. *See* 42 U.S.C. § 12117(a); *Williams*, 792 F. Supp. 2d at 62 ("The Rehabilitation Act and [ADA] adopt the special venue provision of Title VII of the Civil Rights Act of 1964."). In turn, Title VII's venue provision specifies that a plaintiff may bring suit in (1) "any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "the judicial district in which the employment records relevant to such practice are maintained and administered," or (3) "the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(f)(3).[2]

Here, Moland argues that the District of Columbia is an appropriate venue for his ADA claims because, but for ECI's failure to accommodate him, he would have worked at the Kennedy Center as a canine handler. Pl's Opp'n 6–7. ECI replies that this is not what Moland alleged in his complaint, where he "clearly state[d]" that he "asked Defendant Kelley to accommodate his disability and reassign him to another worksite in ECI's portfolio." Defs.' Reply 3 (quoting Compl. ¶ 63). The Court is unconvinced by ECI's arguments. While the complaint mentions that Moland would have liked to be reassigned to another worksite, even suggesting his preference for his old assignment site at the IRS building in Maryland, ECI disregards the parts of the Complaint where Moland alleges that his request for an accommodation included a request to "be permitted to take short breaks after prolonged periods

---

[2] Title VII also provides for residual venue "within the judicial district in which the respondent has his principal office" when venue cannot be found using any of the first three prongs. 42 U.S.C. § 2000e–5(f)(3). The residual venue prong is not relevant here, when venue can be found in several districts using the first three prongs of § 2000e–5(f)(3).

of walking, running, or standing [at the Kennedy Center]." *E.g.* Compl. ¶¶ 65, 107, 134, 163. Taking all inferences in Moland's favor, the Court finds that he has plausibly alleged at this stage that he could have worked at the Kennedy Center in the District of Columbia had his request for an accommodation been granted. And while neither party addresses the proper venue for Moland's retaliatory termination claim, Moland would have presumably worked at the Kennedy Center if he had not been terminated from the position. The Court therefore finds that Moland's ADA failure to accommodate, discrimination, and retaliatory termination claims are properly venued.

On the other hand, there is nothing to suggest that Moland would have worked in the District of Columbia but for ECI's alleged *post-termination* retaliation. Moland alleges that he applied for positions with the Department of State, *e.g.* Compl. ¶ 382, and Department of Defense, *e.g.* Compl. ¶ 386, that ECI allegedly "maliciously and purposefully" prevented him from obtaining in retaliation for having complained about the disability discrimination he endured, Compl. ¶ 381. But nowhere does he allege where these positions would have been located. *See generally* Compl. Nor does Moland make any arguments as to why this district is an otherwise proper venue under Title VII's venue provision. *See generally* Pl.'s Opp'n. Because it is Moland's burden to show that his claims are properly venued in this district, *see Williams*, 792 F. Supp. 2d at 62, and he has not met that burden as to his ADA claim for post-termination retaliation, the Court finds that the claim is improperly venued.

### B.  Moland's USERRA Claims Are Improperly Venued

Next, Moland brings two claims under USERRA for unlawful discrimination on the basis of prior military service, against both Explosive Countermeasures and Kelley. Moland appears to argue that the USERRA claims are governed by Title VII's venue provision, and therefore

properly venued because he would have worked at the Kennedy Center but for ECI's discrimination. Pl.'s Opp'n 6–7. ECI argues that the USERRA claims are improperly venued pursuant to 28 U.S.C. § 1391(b), the general venue statute. Defs.' Mem. Supp. 3–5. Perplexingly, neither party cites to USERRA's special venue provision, 38 U.S.C. § 4323(c)(2). After analyzing the claims under that provision, the Court concludes that they are improperly venued in this district.

Like Title VII, USERRA contains its own special venue statute, which trumps the general venue provisions of 28 U.S.C. § 1391. *See* 38 U.S.C. § 4323(c)(2); *Washington v. Coastal Int'l Sec.*, No. 13-1218 (JDB), 2014 WL 92423, at *1 (D.D.C. Jan. 10, 2014) ("The USERRA has its own venue provision which 'trumps the general venue statute.'" (quoting *Johnson v. Gen. Dynamics Info. Tech., Inc.*, 675 F. Supp. 2d 236, 240 (D.N.H. 2009)). USERRA's venue statute provides that "[i]n the case of an action against a private employer, the action may proceed in the United States district court for any district in which the private employer of the person maintains a place of business." 38 U.S.C. § 4323(c)(2). Here, the complaint contains no allegations that ECI maintains a place of business in the District of Columbia. *See generally* Compl. Neither is the fact that ECI contractors presumably work at government sites in the District of Columbia, such as the Kennedy Center, alone sufficient for ECI to maintain a place of business there. *See, e.g.*, *Johnson*, 675 F. Supp. 2d at 241 (finding that defendant had no place of business in New Hampshire even when several of its employees worked at a government office in New Hampshire). And Moland does not dispute the Defendants' assertion in their motion that ECI is headquartered and maintains a place of business in Virginia. *See* Defs.' Mem. Supp. 2. The Court therefore finds that Moland has not met his burden to show that the USERRA claims are properly venued in this district.

### C. Moland's FLSA Claims Are Improperly Venued

Finally, Moland brings four FLSA claims for retaliatory termination and post-termination retaliation, against both Explosive Countermeasures and Kelley. Moland again appears to argue that the FLSA claims are properly venued under the Title VII special venue provision—or at least his retaliatory termination claim. *See* Pl.'s Opp'n 6–7. ECI argues that venue here is improper under the general venue statute, 28 U.S.C. § 1391(b), because the defendants all reside in Virginia and all decision-making relating to the discrimination and retaliation occurred in Virginia. Defs.' Mem. Supp. 3–5. The Court agrees.

Because there is no special venue provision in the FLSA, proper venue falls under the general venue provision of 28 U.S.C. § 1391(b). *See Aguilar v. Michael & Son Servs., Inc.*, 292 F. Supp. 3d 5, 9 (D.D.C. 2017) (assessing proper venue for FLSA claims under 28 U.S.C. § 1391(b)); *Shay v. Sight & Sound Sys., Inc.*, 668 F. Supp. 2d 80, 81, 83 (D.D.C. 2009) (same). Under the general venue statute, venue is proper in a district where (1) a defendant resides, if all defendants are residents of the State in which the district is located; (2) a substantial part of the events giving rise to the claim occurred; or (3) if there is no district in which the action may otherwise be brought, wherever the defendants are subject to personal jurisdiction. 28 U.S.C. § 1391(b). Generally, a defendant corporation is deemed a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

Defendants argue in their motion that the District of Columbia is not a proper venue because "all of the material events giving rise to Plaintiff's claims took place in Virginia." Defs.' Mem. Supp. 4. On the basis of the allegations in the complaint and of the documents included in the parties' briefs, the Court agrees. First, this district cannot be a proper venue

under 28 U.S.C. § 1391(b)(1) because not all defendants are residents of the District of Columbia. Regardless of whether Explosive Countermeasures is subject to personal jurisdiction in this district, the parties agree that Kelley is a resident of Virginia. *See* Defs.' Mem. Supp. 4; Affidavit of Megan Kelley ¶ 1, Mot. Transfer Ex. 2, ECF No. 3-2; Compl. ¶ 8. Next, ECI argues, and Kelley attests in her affidavit, that all decision-making relating to Moland's alleged retaliatory termination and post-termination retaliation occurred at Explosive Countermeasures' headquarters in Delaplane, Virginia. *See* Defs.' Mem. Supp. 4; Kelley Aff. ¶ 5. Moland again fails to dispute ECI's arguments, nor does the complaint contain any allegations from which the Court could infer that a substantial part of the events giving rise to his claims occurred in this district. And finally, the catch-all provision of § 1391(b)(3) does not apply, because the Eastern District of Virginia is clearly a proper venue: uncontested facts provided by ECI indicate that the allegedly retaliatory decisions leading to Moland's claims were made from Explosive Countermeasures's headquarters, which are located in that district. *See* Kelley Aff. ¶ 5. The Eastern District of Virginia is therefore a district where a substantial part of the events giving rise to Moland's claims occurred, satisfying § 1391(b)(2). The Court accordingly finds that Moland's FLSA claims are improperly venued.

### D. The Court Cannot Exercise Pendent Venue

While the parties do not squarely address the issue, the Court next briefly considers whether it can exercise pendent venue over the improperly venued claims.[3] The Court concludes that it cannot.

---

[3] Moland never explicitly makes the argument but appears to be asking for the exercise of pendent venue in his opposition. *See* Pl's Opp'n 6 (asserting that venue is proper when "twelve of the eighteen causes of action asserted in Plaintiff's Complaint arise from . . . Plaintiff's assignment to work as an explosives detection canine handler . . . in Washington, D.C.")

As discussed above, while under the traditional rule "venue must be appropriate for each claim," *Bartel*, 617 F. Supp. at 197, pendent venue allows courts to "exercise their discretion to hear claims at to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued," *Johnson*, 623 F. Supp. 2d at 37 (citing *Beattie*, 756 F.2d at 102–03). However, "[w]here a special venue provision places venue in a specific district, such a provision controls venue for that claim" and courts cannot exercise pendent venue over it. *Id.*; *see also Bartel*, 617 F. Supp. at 198 n.33 (refusing to exercise pendent venue over Title VII claim because "Congress deliberately sought to limit the venues in which Title VII actions might be brought" (citing *Stebbins v. State Farm Ins. Co.*, 413 F.2d 1100, 1102 (D.C Cir. 1969))). And courts have consistently refused to hear improperly venued claims alleging discrimination on the basis of a protected category when the only properly venued claim is one for discrimination involving a different protected category. *E.g. Webster v. Mattis*, 279 F. Supp. 3d 14, 19 (D.D.C. 2017) (finding pendent venue inappropriate for Title VII claim when only properly venued claim was pursuant to ADEA); *Archuleta v. Sullivan*, 725 F. Supp. 602, 606 (D.D.C. 1989) (finding pendent venue inappropriate when "each claim alleges discriminatory conduct against a different protected class").

Here, the Court cannot exercise pendent venue as to any of Moland's improperly venued claims. With respect to the ADA and USERRA claims, the Court will not go against the congressional limitations explicitly set in Title VII and USERRA's specific venue provisions by hearing a claim that is improperly venued in this district. And because Moland's FLSA claims allege retaliation on the basis of a different protected activity than his ADA retaliation claim, the Court finds that the exercise of pendent venue as to the FLSA claims would be inappropriate as well.

### E. Transfer of this Case to the Eastern District of Virginia Is in the Interest of Justice

Having determined that only three of Moland's ten federal claims are properly venued in this district, the Court next determines whether dismissal or transfer is appropriate. When a court determines that venue is improper, it must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Whether transferring [a] case is in the interest of justice rests within the sound discretion of the court," *Booz-Allen*, 227 F. Supp. 2d at 25 (citing *Hayes*, 546 F. Supp. at 665), but "the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." *Ellis-Smith*, 793 F. Supp. 2d at 177. The Court first reviews whether the Eastern District of Virginia is a proper venue for all of Moland's claims, before determining whether a transfer is appropriate. The Court concludes that the interest of justice will be served by transferring the entire case to the Eastern District of Virginia.

First, the Court has little trouble concluding that all claims in this case are properly venued in the Eastern District of Virginia. As discussed above in Part IV.C., that district is a proper venue for all of Moland's FLSA claims. Because Explosive Countermeasures is headquartered in Delaplane, Virginia, inside the district, Kelley Aff. ¶ 3, the company maintains a place of business in the Eastern District of Virginia and the district is therefore also a proper venue for Moland's USERRA claims, *see* 38 U.S.C. § 4323(c)(2). And finally, because the decisions giving rise to the alleged discrimination and retaliation forming the basis for Moland's ADA claims were made at the Delaplane headquarters, Kelley Aff. ¶ 5, the Eastern District of Virginia is also a proper venue for the ADA claims, *see* 42 U.S.C. § 2000e–5(f)(3).

Second, the Court finds that it is in the interest of justice for this entire case to be transferred to the Eastern District of Virginia. Because "the interest of justice generally requires

14

transferring a case . . . in lieu of dismissal," *Ellis-Smith*, 793 F. Supp. 2d at 177, it is clear to the Court that the improperly venued claims at least should be transferred. But courts also have broad discretion to transfer a case in the interests of justice. *See* 28 U.S.C. § 1404(a); *Webster*, 279 F. Supp. 3d at 19 (noting factors to consider, including private interest factors such as "the parties' choice of forum, where the claim arose, and the convenience of the parties and witnesses," and public interest factors such as "the transferee's familiarity with the governing laws and . . . local interest in deciding local controversies"). And courts in this district have consistently found that "[i]t is in the interest of justice to transfer [an] entire complaint rather than have it heard in two different venues." *Gardner v. Mabus*, 49 F. Supp. 3d 44, 47–48 (D.D.C. 2014) (quoting *In re O'Leska*, No. 00-5339, 2000 WL 1946653, at *1 (D.C. Cir. 2000)).

Here, Moland's arguments to the contrary notwithstanding, *see* Pl.'s Opp'n 8–13, the Court easily finds that the interest of justice warrants a transfer of this entire case to the Eastern District of Virginia. Moland may have chosen to bring his ADA claims in this district, but his claims stem from conduct that occurred in significant part in the Eastern District of Virginia, and it would be equally convenient for parties and witnesses to have this case heard in that district— at any rate, more convenient than having this case litigated in courtrooms in two separate districts. The public interest in the efficient administration of justice similarly warrants the transfer of this entire case rather than splitting Moland's claims. The Court accordingly grants the motion to transfer the case.

### F. Moland's Motion to Amend Is Denied

Finally, the Court briefly addresses Moland's request for leave to amend his complaint, included as a footnote to his opposition. *See* Pl.'s Opp'n 2 n.1. The motion fails to comply with this Court's Local Rules, which provide that "a motion for leave to file an amended pleading

shall be accompanied by an original of the proposed pleading as amended." D.D.C. R. 7(i), 15.1. Courts in this circuit have routinely denied motions for leave to amend that fail to comply with these Local Rules. *E.g. Doe v. Kipp DC Supporting Corp.*, No. 18-260, 2019 WL 95636, at *9 (D.D.C. Jan. 3, 2019); *Brown v. Potomac Elec. Power Co.*, 306 F. Supp. 3d 194, 202 (D.D.C. 2018). The Court accordingly denies the motion to amend.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer (ECF No. 3) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: May 21, 2019                                                  RUDOLPH CONTRERAS
                                                                                              United States District Judge